# WHEELING.

## CHESAPEAKE & OHIO R. Co. *v.* J. S. MILLER, AUDITOR.

Submitted March 18, 1882.    Decided April 22, 1882.

1. A court of equity has jurisdiction to enjoin the collection of an illegal tax, when such injunction will prevent a multiplicity of suits. (p. 416).

2. Although the State of West Virginia cannot be sued, yet an injunction will lie against the Auditor of the State to restrain him from the performance of a mere ministerial duty. (p. 416)

3. When the text of a constitutional provision is plain and unambiguous, courts in giving construction thereto are not at liberty to search for its meaning beyond the instrument itself. (p. 419).

4. The clear meaning of section one of article eight of the Constitution of 1863 is, that "*all* property both real and personal shall be taxed," except such as the Legislature may exempt under the exception contained in said section. (p. 437.)

5. By said section of the Constitution the Legislature was clearly inhibited from passing a law exempting the property of a railroad-corporation from taxation. (p. 436).

6. The last clause of section seven of the act of the Legislature passed March 1, 1866, which declares, that "no taxation upon the property of said company shall be imposed by the State, until the profits of said company shall amount to ten per cent. on the capital of said company," is unconstitutional and void. (p. 437).

Appeal from a decree of the circuit court of the county of Ohio, rendered on the 6th day of June, 1881, in a cause in said court then pending, wherein the Chesapeake & Ohio Railway Company was plaintiff, and Joseph S. Miller, Auditor of the State of West Virginia, was defendant, allowed upon the petition of said Miller.

Hon. Thayer Melvin, judge of the first judicial circuit, rendered the decree appealed from.

JOHNSON, PRESIDENT, furnishes the following statement of the case :

The plaintiff in February, 1880, filed its bill of injunction in the circuit court of Ohio county, "to restrain Joseph S. Miller. Auditor of the State of West Virginia, from adding to the amount of the taxes alleged to have been assessed upon the complainant's property ten per centum or any other sum, and from certifying said alleged taxes or any part thereof to the sheriffs of the counties mentioned in said auditor's statement, or of any or either of said counties, for collection, or from doing anything whatever looking or tending to the collection of said taxes" &c. The bill of injunction had been presented to the Hon. Joseph Smith, judge of the seventh judicial circuit, and the injunction had been by him granted, and the process had been issued thereon by the clerk of the circuit court of Ohio county, and bond as required having been given, the injunction was by the clerk endorsed upon the process. The bill set out the legislation of the State of Virginia and this State looking to the building of a railroad from tide-water to the Ohio river and the incorporation of the Chesapeake and Ohio Railroad Company, and set forth particularly the provisions of the act of the Legislature of West Virginia, dated March 1, 1866, entitled "An act to incorporate the Covington and Ohio Railroad Company," the seventh section of which provided among other things, that "*no taxation upon the property of the said company shall be imposed by the State, until the profits of said company shall amount to ten per cent. on the capital of said company,*" also the act of February 26, 1867, entitled "*An act to provide for the completion of a line or lines of railroad from the waters of the Chesapeake to the Ohio River,*" the second section of which act provided, that "the companies, which may consolidate under the provisions of this act, shall constitute one corporation, which shall be vested with '*all the rights, privileges, franchises and property, which may have been vested in either company prior to the act of consolidation,*' and shall be known as the Chesapeake and Ohio Railroad Company." The 14th section of the same act pro-

vides, that the several companies therein mentioned or either of them might contract with the Covington and Ohio Railroad commissioners for the construction of the railroad from Covington to the Ohio river, and in the event such contract should be made, the company so contracting should be known as the "Chesapeake and Ohio Railroad Company" and "shall be entitled to all the benefits of the charter of the Covington and Ohio Railroad Company, and to all the rights, interests and privileges, which by this act are conferred upon the Chesapeake and Ohio Railroad Company, when organized."

The bill alleges, that such contract was made, and was formally adopted by the Legislature of West Virginia by an act passed January 26, 1870, entitled : "An act confirming and amending the charter of the Chesapeake & Ohio Railroad Company ;" that the company was organized, and the road completed. The bill further alleges, that from time to time trust-deeds or mortgages were executed upon the property of the said company and recorded in the counties, through which the road passed. The mortgages or deeds of trust are specified. It is further alleged, that suits were instituted to foreclose these mortgages; that in said suits the said mortgages were foreclosed, and a sale of the railroad and of all the property of the company was ordered, and said property was sold, and at the sale A. S. Hatch, C. P. Huntington, A. A. Law, Isaac Davenport, Jr., and John Cartru, styling themselves a "committee of purchase and re-organization for themselves and others," became the purchasers thereof, which sale was confirmed, and a deed was ordered to be executed, by a commissioner appointed for the purpose, and was duly executed, a copy of which is filed with the bill, in which conveyance said Hatch and others, the purchasers, " declared that the name, by which by virtue of such conveyance and the statutes in such cases made and provided they should and would become a corporation, is and shall be the *Chesapeake and Ohio Railway Company.*"

The bill charges, that by virtue of the matters aforesaid it on the first day of July, 1878, (the date of said deed) became and was, and has since continued to be, and now is, a corporation by the name of " The Chesapeake and Ohio Railway Company, *entitled to all the works, property, estate, rights, fran-*

*chises and privileges theretofore owned, used and enjoyed by The Chesapeake and Ohio Railroad Company, including therein the exemption from taxation on the property of said company* conferred by the contract, by which the company was formed and organized," etc.   The bill alleges, that the profits of The Chesapeake and Ohio *Railroad* Company and The Chesapeake and Ohio *Railway* Company have never at any time amounted to ten per cent. a year on the capital and have never yet altogether amounted to ten per cent. on its capital.   The bill charges, that Joseph S. Miller, auditor of the State of West Virginia, has made out and transmitted to the president of the complainant company a detailed statement of the amount of taxes claimed to be due for the year 1879 from the company for State, State-school, county and district purposes in the State, amounting in the aggregate to $27,927.40, and has accompanied the same with a letter signed in his official capacity, dated December 10, 1879, describing said statement as a statement of taxes assessed against the company for the year 1879, and stating in said letter, that if payment was made at the treasury of the State on or before the 20th day of January next thereafter, two and one half per centum would be deducted, and if not paid by that day, that it would be his duty to add ten per centum thereto, and certify to the proper officers for collection; that complainant is informed and believes, that the said auditor bases his action on an act of the Legislature of West Virginia, passed January 31, 1879, purporting to amend section ʼ7 of the act of March 1, 1866, so as to repeal the exemption from taxation thereby granted.   Complainant alleges, that said act has never been agreed to by it, and is advised, that in so far as it attempts to deprive the complainant of the exemption aforesaid, it is null and void; and that the said auditor is not justified by it nor by any law of the State imposing taxes in the action done and threatened to be done by him; that said act as well as all other acts, which were designed or can be construed to impose taxes upon the property of the complainant in derogation of the exemption granted by said act of March 1, 1866, is in violation of the provisions of the Constitution of the United States, which prohibits a State from passing any law impairing the obligation of a contract.

The bill charges, that unless the said auditor is restrained, he will certify said taxes to the officers in the counties, through which complainant's road passes, for collection, and to permit this would be unjust and oppressive, and would involve a multiplicity of suits to restrain the sheriffs from the collection of such taxes, &c., and would be in violation of complainant's chartered rights. The bill concludes with the prayer for the injunction, which was granted.

The defendant on the 11th day of May, 1880, demurred to the bill on three grounds : 1st, for want of equity ; 2d, for want of proper parties ; and 3d, for want of jurisdiction. The demurrer was overruled ; and the defendant answered. In his answer he insists, " *that any act of the Legislature of West Virginia passed since it became a State, which authorized or attempted to authorize or agree to the exemption of any property of a railroad company from taxation, was unconstitutional, null and void.* The said defendant further insisted, that if any act exempting the property of the Chesapeake and Ohio Railroad Company was constitutional, it conferred an immunity personal to the said company, and that by the sale of the said company's property and the deed made to the purchaser said immunity did not pass to said purchaser, the Chesapeake and Ohio Railway Company, the complainant, and prayed, that the injunction might be dissolved and the bill dismissed.

The case was finally heard on the 6th day of June, 1881, and the motion to dissolve the injunction was overruled, and the injunction was perpetuated.

From this decree the auditor appealed.

*C. C. Watts, Attorney General,* for appellant cited the following authorities : Cons. (1863) Art. VIII, § 1 ; Cons. of Va. (1851) Art. IV, §§ 22, 23 ; Jour. Convention of 1872, p. 202 ; Cooley on Taxation p. 143 ; 5 Ohio (N. S.) 589 ; 11 Ohio (N. S.) 541 ; Cons. of Ohio Art. XII, § 2 ; Cons. of Cal. Art. II, § 13 ; Cooley on Taxation pp. 132, 133 ; 43 Cal. 332 ; 35 Cal. 677 ; 37 Cal. 54 ; 38 Cal. 461 ; 47 Cal. 91 ; Cool. Con. Lim. 58 ; *Id.* 79 ; Cons. of Ark. Art. X, § 2 ; 25 Ark. 289 ; Cons. of Ia. Art. VIII, § 2 ; 21 Ia. 227 ; 30 Ill. 146 ;

25 Ill. 557 ; 3 Ohio (N. S.) 488 ; 6 Ohio (N. S.) 179 ; 4 Cal. 388 ; 40 Miss. 618 ; 29 Md. 377 ; 7 Wall. 71 ; 32 N. J. 426 ; 14 Gratt. 422 ; Cool. Con. Lim. ch. 14 ; 3 Otto 223 ; 18 Wall. 392 ; 30 Conn. 160 ; 21 Wall. 492 ; Cooley on Taxation 66 ; *Fox's adm'r* v. *Commonwealth*, 16 Gratt. —; 16 Wall. 244 ; 18 *Id.* 146 ; 4 Cow. 556 ; Wall. 405 ; Cons. (1863) Art. XI, § 5 ; Acts 1872–3, ch. 88 ; Cons. (1872) Art. VI, § 39.

*Robert White for appellant* :

1. Exemption must be expressly and clearly declared, in terms too plain to · be mistaken. The presumptions are against them. *Murray* v. *Charleston*, 98 U. S. 436 ; *Railway Co.* v. *Lofton*, 96 U. S. 564 ; *Erie Railway Co.* v. *Pennsylvania*, 21 Wall. 498 ; *Jefferson Bank* v. *Skelly*, 1 Black 436 ; *Minot* v. *Railroad Co.*, 18 Wall. 206 ; *Railroad Co.* v. *Commissioners*, 13 Otto 3 ; Cooley on Taxation 54, 5, 145.

2. The allegations of the bill are not sufficient to show the plaintiff entitled, nor is the testimony sufficient to prove the allegations. Acts 1866, ch. 131, § 7 ; Acts 1867, February 26 ; Acts 1868, February 6 ; Acts 1870, January 26 ; Acts 1879, February 4th and March 7th ; *Commonwealth* v. *Chesapeake & Ohio R. R. Co.*, 27 Gratt. 725.

3. If exemption even was conferred upon the Chesapeake and Ohio Railroad Company, it did not and could not pass by judicial sale and deed to the plaintiff company. Acts 1871, p. 90 ; 96 U. S. 436 ; 98 U. S. 564 ; 18 Wall. 206 ; 21 Wall. 498 ; 1 Black 436 ; 13 Otto 718 ; 27 Gratt. 344 ; Cooley Cons. Lim. 280, 281 ; *Delaware Railroad Tax*, 18 Wall. 225 ; *Morgan* v. *Louisiana*, 3 Otto 223 ; Cooley Cons. Lim. 127, 284 ; *Thomas* v. *Railroad Co.*, 11 Otto 71 ; *Hall et al.* v. *The Sullivan Railway*, 21 Law Rep. 138 ; *Humphrey* v. *Pegues*, 16 Wall. 214 ; *Trask* v. *Maguire*, 18 Wall. 405 ; *Maine* v. *R. R. Co.*, 6 Otto 499 ; *Gaines* v. *R. R. Co.*, 7 Otto 711 ; *Belts* v. *State*, 4 Zeb. (N. J.) 566 ; *Railroad Co.* v. *Commissioners*, 13 Otto 1 ; *Wilson* v. *Gaines*, 13 Otto 417 ; *Railway Co.* v. *Lofton*, 7 Otto 559 ; *Central R. & B. Co.* v. *Georgia*, 92 U. S. 665 ; *K. & O. R. R. Co.* v. *Hicks*, 15 Am. R. R. R. 197 ; *Wilmington R. R.* v. *Reed, Sheriff*, 13 Wall. 264 ; *The Phil. & W. R. R. Co.* v. *Maryland*, 10 How. 376 ; Cooley Cons. Lim. 205, 24 How. 301.

4. The exemption clause is unconstitutional. Cooley on Tax, 52–55; Cons. 1863, Art. 8, § 1; *State* v. *North,* 27 Mo. 483; *Zanesville* v. *Auditor,* 5 Ohio St. 592; *Elis* v. *L. & N. R. R. Co.* (Tenn.) Manuscript opinion; *Memphis and C. R. R. Co.* v. *Gaines,* 3 Tenn. Ch. 604; *Knowlton* v. *Supervisors,* 9 Wis. 411; *Rector, &c.* v. *Philadelphia,* 24 How. 302; 8 Otto 564; 21 Wall. 408; 1 Black 496; *Witliamson* v. *Massie,* 33 Gratt.; *Murray* v. *Charleston,* 96 U. S. R.

5. If plaintiff is entitled to any exemption it is of the State taxes. Cooley on Tax. 244; *Douglass* v. *Harrisville,* 9 W. Va. 162; *Gilkeson* v. *Frederick,* 13 Gratt.; Cons. 1863, ch. 10, § 62; 1 W. Va. —; Cons. 1863, Art. VII, §§ 1 and 2; Cons. 1872, Art. 10, § 9; 96 U. S. R. 659, 666; *Sloan & Seymour* v. *Supervisors,* Supreme Ct. W. Va., not reported.

6. This is practically a suit against the State, and therefore bill will not lie. Cons. Art. VII, § 35; *Osborn* v. *Bank,* 9 Wheat. 740; *Davis* v. *Gray,* 16 Wall. 203; *McComb* v. *Board, &c.,* 2 Woods, Ct. Ct. 54; *Marbury* v. *Madison,* 1 Cranch. 137; *Kendall* v. *Stokes,* 12 Pet. 527; *Slack* v. *Jacob,* 8 W. Va. 663; *Mississippi* v. *Johnson,* 4 Wall. 498; Cons. Art. VIII sec. 1; Art. VI sec. 1; Art. V; Art. VIII sec. 21; *Dunnington* v. *N. W. Turnpike,* 6 Gratt. 170; *Tennessee* v. *Sneed,* 6 Otto 71; *Beers* v. *Arkansas,* 20 How. 527.

7. Injunction will not lie against illegal taxes, unless some other ground of equitable jurisdiction exists. *Douglass* v. *Harris,* 9 W. Va. 167; *Davis* v. *Chicago,* 11 Wall. 110; Cooley on Tax. 536, 538, 558, 566.

8. Multiplicity of suits is the equitable ground relied upon, and is not applicable here. Cooley on Tax. 536, 545-6; *Reed* v. *Bull,* 11 Gratt.

9. Plaintiff has other remedies, therefore bill will not lie; and proper parties are not made. Acts 1879, p. 125; *Erskine* v. *Van Arsdale,* 15 Wall. 75, 77; Cooley on Tax. 568-9; *Norris &c.* v. *Bean,* 17 W. Va.

10. Plaintiff is not a legally constituted corporation, and therefore cannot sue. *Kable* v. *Mitchell,* 9 W. Va. 517; *Capehart* v. *Downy,* 10 W. Va. 142.

11. Chapter 5 Acts 1879, repealing the exemption clauses in Acts of 1866, could legally be passed. *Delaware Railroad Tax,* 18 Wall. 225; *Knoxville & Ohio Railroad Co.* v. *Hicks,*

15 Am. R. R. R. 198 ; *Dartmouth College Cases*—Shirly ; *Hart* v. *B. & O. R. R. Co.*, 6 W. Va. 338 ; *State* v. *Same*, 15 W. Va. 392 ; *Erie & N. E. R. R. Co.* v. *Casey*, 3 Casey (Penn.) 309 ; *Swan* v. *Williams*, 2 Gibbs (Mich.) 430 ; *Bonaparte* v. *R. R. Co.*, 1 Baldw. 222 ; *Munn* v. *Illinois*, 94 U. S. 126 ; *Stone* v. *Wisconsin*, 94 U. S. 186 ; *Boston Beer Co.* v. *Massachusetts*, 115 Mass. 153 ; *Jersey* v. *Yard*, 95 U. S. 104 ; *Hepburn* v. *Griswold*, 8 Wall. 603 ; *Legal Tender Cases*, 12 Wall. 457.

I had not noticed case of *Railroad Co.* v. *Hamblen*, 12 Otto 274 before I finished this argument.

It seems, in this case, the court held substantially that exemption would not pass under word "franchises," however it might under the word "privileges" under and by force of the statute therein referred to, being the Act referred to in *Wilson* v. *Gaines*, 13 Otto, and *Railroad Co.* v. *Hicks*, 15 Am. R. R. R.

These last named cases, as I have shown, hold that exemption would pass, simply because the State was a *party to the contract*—that the State was estopped—and that the decree of the court in pursuance of the act of the Legislature was *equivalent to a legislative* GRANT.

It seems to me, that the cases therefore can all be reconciled, and that my view is sustained.

*William J. Robertson* and *William H. Hogeman* for appellee cited the following authorities : Bigelow on Estoppel 423 ; 12 W. Va. 537 ; Acts 1871 p. 90 ; Acts 1877 p. 14 ; Code, 1860, Tit. 18, ch. 61, §§ 28, 29, 31 ; Code, ch. 125, § 36 ; Acts 1879, p. 125 ; 16 W. Va. 541 ; 9 W. Va. 162 ; Cool. Tax. 536, 541 ; 1 High on Inj. (2d ed.) § 530 *et seq.* ; Hill. Inj. pp. 455, 457, 461 ; 5 Ohio St. 361 ; 22 Wall. 444 ; 7 W. Va. 689 ; 9 Wheat. 738 ; 16 Wall. 203 ; 92 U. S. 540 ; *McComb* v. *Bowers*, 2 Woods C. C. ; 8 W. Va. 657 ; 33 Gratt. 237 ; 5 Ohio St. 53 ; 15 Tex. 319 ; 63 N. C. 147 ; 36 Ala. 371 ; 2 Cal. 80 ; 15 Ia. 538 ; 3 Bush 231 ; 40 Miss. 268 ; 4 Kan. 379 ; 25 Md. 173 ; 17 La. 156 ; 53 Pa. St. 9 ; 1 Brev. 238 ; 4 Wall. 498 ; Cooley on Taxation 244 ; 14 Gratt. 385 ; 30 Gratt. 471 ; 9 W. Va. 162 ; Cons. (1863) Art. VII, §4 ; *Id.* Art. X, § 2 ; Acts 1879, ch. 73, § 67 ; 27 Gratt. 344 ; 4 Otto. 718 ; 3 W.

Va. 328; 58 Pa. St. 46; Cooley on Taxation 52, 53, 54, 55; *Id.* 145; Cool. Con. Lim. 279-280 *et seq.*; *Id.* 127; *Id.* 383; 8 Wall. 436; 21 Gratt. 604; Cons. of Va. (1870) Art. X, § 3; 27 Mo. 464; 27 Gratt. 352; 4 Otto 718; 30 Ill. 146; 7 Otto 699; Cons. (1863) Art. XI, § 5; 6 W. Va. 575; 15 Am. Rwy. Rep. 204; *Id.* 197; 1 Cranch 299; 6 Wheat. 418; 12 Wheat. 290; Acts 1864, ch. 6, § 1; *Id.* ch. 33, § 4; Acts 1866, ch. 131, § 7; Acts 1867, ch. 109, § 10; Acts 1868, ch. 22, § 7; *Id.* (Ex. Sess.) ch. 117, § 12; Acts 1869, ch. 91, § 9; *Id.* ch. 100, § 7; *Id.* ch. 115, § 10; Acts 1870, ch. 37, § 10; *Id.* ch. 38, § 5, *Id.* ch. 41, § 9; *Id.* ch. 25, § 7; *Id.* ch. 22, § 2; Acts 1871, ch. 93, § 5; *Id.* ch. 168, § 8; *Id.* ch. 170, § 9; *Id.* ch. 172, § 7; *Id.* ch. 187, § 9; *Id.* ch. 188, § 10; *Id.* ch. 201, § 7; Acts 1872, ch. 113, § 11; Acts 1879, p. 156; Acts 1875, p. 102; Code, p. 168; Acts 1863, p. 165; Sen. Journ. 1877; 16 Wall. 244; Acts 1871, p. 91; Acts 1877, p. 14; Code of Va. (1860), p. 356; 102 U. S. 277; 23 Minn. 217; 14 Minn. 297–329; 15 Fla. 637; 42 Conn. 103; 4 Zab. 556; 103 U. S. 422; *Id.* 1; 19 Wall. 483; 2 Woods C. C. 77; 22 N. Y. 252–305; *Id.* 494–508; *Charlestown* v. *Murry*, 96 U. S.

JOHNSON, PRESIDENT, announced the opinion of the court:

It is here argued, that the court did not have jurisdiction of this cause. A court of equity has jurisdiction to enjoin the collection of an illegal tax, where such injunction will prevent a multiplicity of suits. (*Douglass* v. *Town of Harrisville*, 9 W. Va. 162; *Corothers* v. *Board of Education*, 16 W. Va. 541). Although the State of West Virginia cannot be sued, yet an injunction will lie against the auditor of the State to restrain him from the performance of a mere ministerial duty. The right to sue a State-officer, when the State cannot be sued, either to require or inhibit the performance of a mere ministerial duty has been repeatedly recognized. (*Osborn* v. *Bank of the U. S.*, 9 Wheat. 738; *Davis* v. *Gray*, 16 Wall. 203; *Board of Liquidation* v. *McComb*, 2 Otto 531; *Williamson* v. *Massie*, 33 Gratt. 237; *State &c.* v. *Governor*, 5 Ohio St. 528; *Galloway* v. *Jenkins*, 63 N. C. 147; *McDougal* v. *Roman*, 2 Cal. 80; *Bryan* v. *Cattell*, 15 Ia. 538; *Swann* v. *Buck*, 40 Miss. 268; *Magruder* v. *Swann*, 25 Md.

173; *Commonwealth* v. *Railroad Company*, 53 Pa. St. 9.) It is otherwise, where the duty to be performed is purely executive and political. (*Slack* v. *Jacob*, 8 W. Va. 612; *Mississippi* v. *Johnson*, 4 Wall. 475.)

In this case the auditor under the statutes was proceeding in the exercise of a purely ministerial duty; there was nothing whatever left to his discretion. The law required him, after the assessment against the railroad corporation had been made, to notify it through its officers of the amount to be paid, and if it was not paid within a time specified in the law, to add ten per cent. to the amount and certify the taxes down to the proper officers for collection in the counties, through which the road passed. To prevent a multiplicity of suits, the company had the right to test its liability to pay the taxes in one suit restraining the auditor from the performance of the ministerial duty, without performance of which the sheriffs in the counties of course could not proceed. It is much more convenient both for the company and for the officers charged with the collection of the taxes, that it should be done in this way, and is much less injurious to the interests of the State, than it would be to have a number of suits instituted for the purpose of arresting the collection of taxes in the several counties. I think the court clearly had jurisdiction of the cause.

There is nothing in the objection, that the proper parties were not before the court. It is claimed, that the several counties and districts, through which the road passed, ought to have been made defendants. We think not in a case like this. All taxes are imposed by state authority, and until the taxes are received by the auditor, or certified down to the proper officers for collection, as we have seen, the auditor may be enjoined from certifying them down. The counties and districts have not such an interest in the suit, as would make them necessary parties thereto. The auditor represents the interests of the State and necessarily the interests of the counties and districts. Again this is simply a bill of injunction; and there is not as yet anything done or threatened by the counties and districts, that would make them necessary parties to such a bill.

If the complainant is liable to taxation, or is not exempt from taxation under the law, then the injunction should have been

dissolved ; if otherwise, the injunction should have been made perpetual, and the decree of the circuit court is right. If the last clause of section seven of the act of March 1, 1866, is unconstitutional, then the claim of the complainant, that it is exempt from taxation under a contract with the State, is without foundation, as it could in no court be allowed to shield itself under an unconstitutional law. If the law is unconstitutional, there could be no contract under it. But if under the said act and the subsequent acts and the sale and deed the company can take the immunity from taxation, which the act of March 1, 1866, attempted to give, and if the act is constitutional, then the plaintiff is exempt from the payment of all taxes in this State for the present. The position of the learned counsel for the appellee, that unrestrained by constitutional inhibiton the Legislature has the inherent power to exempt from taxation as well as to select the subjects of taxation, is undoubtedly correct. The power of exemption as well as the power of taxation unrestricted by constitutional limitation is one of the essential attributes of sovereignty. (*City of Richmond* v. *Daniel*, 14 Gratt. 387 ; *Home of the Friendless* v. *Rouse*, 8 Wall. 438 ; *City of Richmond* v. *Richmond & Danville Railroad Co.*, 21 Gratt. 604). Did the Constitution of 1863, which was in force in this State, when the act of March 1, 1866, was passed, permit the exemption of the property of a railroad company from taxation ? This question and the further question: If the act was constitutional, did the immunity from taxation pass under the sale and conveyance to the Chesapeake and Ohio Railway Company ? have been elaborately argued by counsel on both sides, both orally and in writing, with learning and ability.

In approaching the decision of the question of the constitutionality of the said act of the legislature we are not unmindful of the rules, which should govern us. Those rules have been clearly and explicitly laid down in numerous decisions; and we feel their binding force. It is a well settled rule, that the meaning of the Constitution is fixed, when it is adopted; and it is not different at any subsequent time, when a court has occasion to pass upon it. The object of construction, as applied to a written constitution, is to give effect to the intent of the people in adopting it. But this intent is to

be found in the instrument itself. It is to be presumed, that language has been employed with sufficient precision to convey that intent; and unless examination demonstrates, that the presumption does not hold good in the particular case, nothing will remain except to enforce it. No change of public sentiment after the adoption of the Constitution should have the slightest weight with the court to influence them to give a construction to the instrument not warranted by the intention of its framers. To be so influenced would justly subject the court or Legislature to the charge of reckless disregard of official oath and public duty; and if such case should become a precedent, these instruments would be of little avail. What a court is to do therefore *is to declare the law as written,* leaving it to the people themselves to make such changes as new circumstances may require. (Cooley's Con. Lim. 54 and cases cited). Where the text is plain and unambiguous, courts are not at liberty to search for its meaning beyond the instrument itself. "To ascertain this meaning, the first resort in all cases is to the natural signification of the words employed in the order of grammatical arrangement, in which the framers of the instrument have placed them. If thus regarded the words embody a definite meaning, which involves no absurdity and no contradiction between different parts of the same writing, then that meaning apparent on the face of the instrument is the one, which alone, we are at liberty to say, was intended to be conveyed. In such a case there is no room for construction. That, which the words declare, is the meaning of the instrument; and neither courts nor Legislatures have a right to add to or take away from that meaning." (Cooley's Con. Lim. 57.)

In interpreting clauses of a Constitution we must presume, that words have been employed in their natural and ordinary meaning. Says Marshall, C. J., in *Gibbons* v. *Ogden,* 9 Wheat. 188 : "The framers of the Constitution and the people, who adopted it, must be understood to have employed words in their natural sense and to have understood what they meant." "This," says Judge Cooley, Con. Lim. 58, "is but saying, that no forced or unnatural construction is to be put upon their language; and it seems so obvious a truism, that one expects to see it universally accepted without question; but the at-

tempt is so often made by interested subtlety and ingenious refinement to induce the courts to force from these instruments a meaning, which their framers never intended, that it frequently becomes necessary to declare this fundamental maxim.   Narrow and technical reasoning is misplaced, when it is brought to bear upon an instrument framed by the people themselves for themselves and designed as a chart, upon which every man learned and unlearned may be able to trace the leading principles of government."

But if the clause to be construed is ambiguous or obscure and leaves room for doubt as to what was really intended by it, then we may resort to other and extrinsic lights to aid us in giving it a correct interpretation; then and only then are we warranted in seeking elsewhere for aid.   Where the text is obscure or ambiguous, we may look to the proceedings of the constitutional convention, which framed the instrument, (Cooley's Con. Lim. 66); but even in such case we must remember, that the Constitution does not derive its force from the convention, which framed, but from the people, who ratified it.   Judge Cooley, page 67, says : "The intent to be arrived at is that of the people; and it is not to be supposed, that they have looked for any dark or abstruse meaning in the words employed, but rather that they have accepted them in the sense most obvious to the common understanding, and ratified the instrument in the belief, that that was the sense designed to be conveyed."   Also in case of doubtful meaning in the words used, we may look to contemporaneous and practical construction.   "Contemporaneous construction may consist simply in the understanding, with which the people received it at the time, or in the acts done in putting it in operation, and which necessarily assume, that it is to be construed in a particular way.   In the first case it can have very little force, because the evidences of the public understanding, when nothing has been done under the provision in question, must always necessarily be vague and indecisive.   But where there has been a practical construction, which has been acquiesced in for a considerable period, considerations in favor of adhering to this construction sometimes present themselves to the courts with a plausibility and force, which it is not easy to resist." (Cooley's Con. Lim. 67.)   Of this character was the

question presented in *Bridges* v. *Shallcross*, 6 W. Va. 562. And the rules there laid down we approve. In *Bank of United States* v. *Halstead*, 10 Wheat. 63, Mr. Justice Thompson said: "If any doubt existed, whether the act of 1792 vests such power in the courts, or with respect to its constitutionality, the practical construction given to it ought to have great weight in determining both questions."

Mr. Justice Johnson assigns a reason for this in the case of *Ogden* v. *Saunders*, 12 Wheat. 290, where he says: "Every candid mind will admit, that this is a very different thing from contending, that the frequent repetition of a wrong will create a right."

The question in such case is: Has a wrong been committed? On page 70 of Cooley's Con. Lim., the author criticises the *ab convenienti* argument used by some courts, but says: "It is believed however, that in each of these cases an examination of the Constitution left in the minds of the judges sufficient doubt upon the question of its violation to warrant their looking elsewhere for aid in interpretation, and that the cases are not in conflict with the general rules as above laid down. Acquiescence for however great a length of time cannot legalize a clear usurpation of power, where the people have plainly expressed their will in the Constitution and have appointed judicial tribunals to enforce it. A power is frequently yielded to, merely because it is claimed; and it may be exercised for a long period in violation of the constitutional prohibition, before the mischief, which the Constitution was designed to guard against, may appear, or before any one may be sufficiently interested in the subject to raise the question; but these circumstances can not be allowed to sanction a clear infraction of the Constitution. We think we allow to contemporary and practical construction its full legitimate force, when we suffer it, where it is clear and uniform, to solve in its own favor the doubts, which arise on reading the instrument to be construed."

But when doubts do arise in the minds of the court as to the interpretation to be put upon a provision of a Constitution, if after a careful examination of the provision, and after all the lights, to which it is proper to resort, have been made use of for the purpose of ascertaining its

true meaning, the court construing the provision still has doubts, whether the legislation complained of is an infraction of the instrument, the court upon such doubts alone is bound to pronounce in favor of the validity of the act. The court does not in such a case, sustain the validity of the act, because other persons or courts have doubted its constitutionality, but because the court itself after using all the aids, that it has a right to use, in its own mind acting for itself and upon its own responsibility is not able to say beyond a reasonable doubt, that the act is unconstitutional. The presumption is in favor of the constitutionality of the act; and in a doubtful case that presumption is sufficient to sustain the act. For it must be remembered, that "whoever derives power from the Constitution to perform any public function, is disloyal to that instrument and grossly derelict in duty, if he does that, which he is not reasonably satisfied the Constitution permits. Whether the power be legislative, executive, or judicial, there is manifest disregard of constitutional and moral obligation by one, who having taken an oath to observe that instrument takes part in an action, which, he cannot say, he believes to be no violation of its provisions. A doubt of the constitutionality of any proposed legislative enactment should in any case be reason sufficient for refusing to adopt; and if legislators do not act upon this principle, the reasons, upon which are based the judicial decisions sustaining legislation, in very many cases will cease to be of force." (Cooley Con. Lim. 73.)

In this cause contemporaneous and practical construction is earnestly insisted upon by counsel for the appellee; and numerous acts of the Legislature passed since the act of March, 1866, in which the Legislature made similar exemptions from taxation, as in the said act of March 1, 1866, are cited. In this connection in the printed argument filed by the counsel it is said, that one of the members of this Court voted as a legislator for some of said acts. This is a mistake. But whether we are authorized to look at any of said acts, or to the proceedings of the constitutional convention of 1863 or of 1872 to aid us in the decision of the question, which we are considering, depends upon the question, whether to our minds there appears any obscurity or ambiguity in the constitutional provision to be construed.

The provision in question is section 1 of article VIII of the Constitution of 1863. It is as follows: "Taxation shall be equal and uniform throughout the State ; and all property, both real and personal, shall be taxed in proportion to its value, to be ascertained as directed by law. No one species of property, from which a tax may be collected, shall be taxed higher than any other species of property of equal value; but property used for educational, literary, scientific, religious or charitable purposes, and public property may by law be exempted from taxation."

Before expressing an opinion upon the meaning of this language we will refer to some of the adjudicated cases construing constitutional provisions.

The appellee relies upon two cases with confidence *Williamson v. Massey, auditor,* 33 Gratt. 237. and *State v. North,* 27 Mo. 464, cited in the Virginia case by Anderson, Judge. It is insisted by counsel for appellee, that "the provision, that taxation shall be equal and uniform, and that all property shall be taxed according to its value, and that no one species of property shall be taxed higher than another, is not a grant to tax, for that right exists in the Legislature independently of the Constitution, nor does it require the taxation of all property. It is simply a rule, that is intended to prevent discrimination in the rate of taxation upon and the valuation of property, that may be subjected to taxation. In other words, it is a direction, that all property, *that is taxed,* shall be taxed according to the rules there prescribed ; but it leaves the Legislature untrammelled in its right to designate the subjects of taxation." It must be admitted, that Judge Anderson's opinion, 33 Gratt. 237 *supra,* justifies this interpretation. He says as to the exception in the Virginia Constitution: "Nor is it taken away or forbidden by section 3 of the same article of the Constitution. That article does not forbid but authorizes exemptions by the Legislature in certain specified cases without forbidding it in others. The language is : 'The Legislature may exempt all property used exclusively for State, county, municipal, benevolent and charitable purposes.' If it had intended to forbid its exempting other property, it would have been easy to add the words 'but no other' ; and we think, if its purposes had been to deprive the Legislature of a power,

the exercise of which in cases, that might arise, might be so beneficial to the State, and the inhibition of which might be so hurtful, the above words or their equivalent would have been added."

The clause of the Constitution of Virginia, which Judge Anderson construed in the said case, is section 1 of article X, which is as follows: "Taxation except as hereinafter provided, whether imposed by the State, county or corporate bodies, shall be equal and uniform, and all property, both real and personal, shall be taxed in proportion to its value, to be ascertained as prescribed by law. No one species of property, from which a tax may be collected, shall be taxed higher than any other species of property of equal value." The second section prevents the taxing the privilege of taking oysters from their natural beds with tongs, but provides, that the amount of sales of oysters so taken in any one year might be taxed at a rate not exceeding the rate of taxation imposed on any other species of property. Then follows the third section, as above quoted: "The Legislature may exempt all property used exclusively for State, county, municipal, benevolent, charitable, educational and religious purposes."

Judge Anderson says at page 241, "It was not intended to require the legislature to tax all the property in the state, and forbid its exercising its inherent power, when necessary for public interest and promotion of a sound public policy, to exempt certain property from taxation, but only to prescribe a rule, by which the Legislature should be guided in apportioning taxation : that all property taxed should be taxed according to its value. That it does not mean to take from the Legislature its important inherent power of exercising a discretion, when in its wisdom it may be deemed beneficial to the public, of exempting certain property from taxation, is more apparent, when read in connection with the first clause in the sentence, which declares, that taxation 'shall be equal and uniform ;' and then follows the clause in question, separated from it only by a comma, 'and all property,' not only personal property, or only real property, but 'all property,' both real and personal, shall be taxed in proportion to its value to be ascertained as prescribed by law. No one species of property, from which a tax may be collected, shall be taxed

higher than any other species of property of equal value.' Giving to the language of this section its proper signification, and to each member of the sentence and to each sentence their just influence and bearing in conveying the meaning of the whole, it was intended to require, that taxation should be on the *ad valorem* principle, and that it should be equal and uniform ; and it was no purpose of the framers of the Constitution by this section to restrict the Legislature in the subjects of taxation, or to divest it of an important element of sovereignty, by an inflexible inhibition of exempting in any case property from taxation."

In the case of *State* v. *North,* 27 Mo. 464, relied upon by Judge Anderson in his opinion, Judge Scott, who delivered the opinion of the court, said: "The 19th section of the bill of rights, which declares, that all property subject to taxation in this state shall be taxed in proportion to its value, has been repeatedly construed by this court to mean, not that all the property in the state must be taxed, but that when any article of property is selected for taxation, it shall be taxed according to its value and not specifically ; and the general assembly may therefore not only lay an *ad valorem* tax on the goods of merchants, but may also impose a tax on their occupation, to be collected in the form of license."

In *Simmons* v. *The State,* 12 Mo. 174, the court held : " The power of the General Assembly of this State to levy taxes for the purposes of revenue is a general primitive power, coeval with the Constitution and inseparable from the exercise of sovereignty. The only restrictions upon this power contained in the Constitution of this State are, 'that all property subject to taxation in this State shall be taxed in proportion to its value,' and that no tax shall be imposed on lands the property of the United States, nor shall lands belonging to persons residing out of the limits of this State ever be taxed higher than the lands belonging to persons residing within the State."

In *Hamilton et al.* v. *St. Louis County Court,* 15 Mo. 5, it was held, that " the clause of the Constitution declaring, that 'all property subject to taxation in this State shall be taxed in proportion to its value,' is evidently mandatory upon the General Assembly, when exercising the taxing power, and furnishes a

rule, which is not to be departed from.  What property shall be subjected to taxation is left to their discretion ; but when they have selected the subjects, the rule for assessing the tax is in proportion to the value of the property.  *  *  *  The idea of equality in taxation is certainly not the prominent idea conveyed by this clause ; nor can we suppose, that it was designed to be conveyed, when we consider, that so many constitutions of other states previously adopted contain clauses expressly enjoining equality of taxation, and when the insertion of a word or two in the clause would have expressed the idea clearly.  It may be further observed, that if equality in taxation is required by this section, then the provision in the first section of the tenth article, that the lands of non-residents shall never be taxed higher than the lands of our citizens, is entirely superfluous."  I shall have occasion to refer to these cases hereafter.

The second section of the twelfth article of the Constitution of Ohio, provides :  "Laws shall be passed taxing by a uniform rule all moneys, credits, investments in bonds, stocks, joint-stock companies or otherwise; and also all real and personal property, according to its true value in money."  Ranney, Chief Justice, in speaking for the whole court of this provision of the Constitution in *City of Zanesville* v. *Auditor of Muskingum County,* 5 Ohio St. 589, said :  "Before the adoption of the present Constitution the whole matter of taxation was committed to the discretion of the General Assembly. It might be levied upon such property and in such proportion as that body saw fit.  The right to make exceptions and exemptions was unquestionable.  But this discretion no longer exists.  The public burdens are made to rest upon the property of the state, and whenever money is to be raised by taxation, the positive injunction is, that 'laws shall be passed taxing by a uniform rule all moneys, credits, investments in bonds, stocks, joint-stock companies or otherwise and also all real and personal property according to its true value in money.' Without express authority of law no tax either for state, county, township or corporation purposes can be levied ; and we see no reason to doubt, that this section of the Constitution is equally applicable to, and furnishes the governing principle for, all laws authorizing taxes to be levied for either purpose.

The great object of the provision was to secure equality and uniformity in the imposition of those public burdens."

So in *Baker* v. *Cincinnati*, 11 Ohio St. 534, Gholson, Judge, for the court with reference to this same provision said : "The anxiety was, that no property should escape its proper and equal burthen.  *  *  *  The things in contemplation were property of every possible description and an equal and uniform tax upon that property according to its true value in money ; the exemptions to be allowed from that tax are specially enumerated."

The California Constitution provides: "Taxation shall be equal and uniform throughout the State.   All property in this State shall be taxed in proportion to its value to be ascertained as directed by law."   This Constitution has no provision, that any property may by the Legislature be exempted from taxation ; and the argument, that certain exemptions were allowed, could not be used to help a construction, that it was not intended to take away the inherent power of the Legislature to exempt property from taxation.   In California it has been by the Supreme Court repeatedly held, that under their Constitution the Legislature had no power to exempt property from taxation.   In *People* v. *Eddy*, 43 Cal. 331, the court by Rhodes, Judge, after referring to the former adjudications on the subject and speaking of the legislation, the constitutionality of which was called in question, said : "If legislation of this character can be sustained, why may not the exemption proceed, until the whole burden of taxation is cast on one species of property ?   Debts secured by mortgages have now the benefit of the exemption ; but by a change in the tone and temper of the Legislature they might be made to bear the whole burden of the taxes.   It was not intended by the framers of the Constitution, that the Legislature, whether actuated by honest or corrupt motives, should have the power to exempt any kind of property from taxation.   The exercise of the power would be dangerous.  *  *  *  It is impossible to conceive of any law, which is more imperatively required by the principles of good government and the just rules of political economy to be equal and uniform than a revenue law.   That the burden of taxation should rest equally upon all property within the State, ought to be axiomatic, not only in theory,

but in practice. To enforce this rule the Constitution has provided, that taxation shall be equal and uniform throughout the State. Is any argument needed in order to make it apparent, that where the general law subjects all solvent debts to taxation, another law which singles out one class of debts, whether the classification is based on the circumstances, that their payment is secured by mortgages, or that they are owing to saving-banks or to a particular bank, corporation or person, or are owing by a particular person, whether natural or artificial, or a particular class of persons—and exempts such debts from taxation, is repugnant to the Constitution ?"

The Illinois Constitution provided, "that the General Assembly shall provide for levying a tax by valuation, so that every person and corporation shall pay a tax in proportion to the value of his or her property. The corporate authorities of counties, townships, school-districts, cities, towns and villages may be vested with power to assess and collect taxes for corporate purposes, such taxes to be uniform in respect to persons and property within the jurisdiction of the body imposing the same." In *Hunsaker* v. *Wright et al.*, 30 Ill. 146, Walker, Judge, for the Court said : "These provisions were manifestly inserted in the fundamental law for the purpose of insuring equality in the levy and collection of the taxes to support the government, whether levied for State, county or municipal purposes. The design was to impose an equal proportion of these burthens upon all persons within the limits of the district or body imposing them."

The Constitution of Arkansas declares "laws shall be passed taxing by a uniform rule all moneys, credits, investments in bonds, joint-stock companies, or otherwise, and also all real and personal property, according to its true value in money ; but burying-grounds, public school-houses, houses used exclusively for public worship, institutions of purely public charity, public property used exclusively for any public purpose shall never be taxed ; * * *, but the General Assembly may exempt from taxation personal property to the value of $500.00 to each tax-payer." McClure, Judge, in *Fletcher* v. *Oliver*, 25 Ark. 289, after quoting the language of the Constitution, said : "Under the former Constitution all laws, that exempted property of the community

from taxation, received a strict construction, because all such laws are in derogation of equal rights. * * * Now in the clause of the Constitution just cited it is declared, that *all* real and personal property shall be taxed, subject however to the condition, that the Legislature may exempt $500.00 to each tax-payer. * * * The declaration that *all* real property except certain kinds held for charitable and public purposes specifically enumerated amounts to an inhibition on the Legislature from exempting other real property from taxation. Again the Constitution in relation to personal property limits the amount to $500.00, that may be exempted, which precludes the idea, that any other or further exemption would be made. The imperative command of the Constitution is, that the Legislature shall tax by a uniform rule *all* property except that specifically enumerated as being exempt from tax by the express terms of the Constitution. * * * Taxing by a uniform rule means by one and the same unvarying standard; uniformity not only in the *rate of taxation,* but uniformity in the *mode* of assessment, by which the value is ascertained. There must be an equality of burden. This uniformity must be co-extensive with the territory, to which it applies. If a state-tax, it must be uniform all over the State; if a county, township, city, town or district-tax, it must be uniform throughout the extent of the territory, to which it applies. The property within the legal sub-division established by law for the convenience of the people must all pay homage to this one uniform rule."

The Tennessee Constitution of 1870 provides: "All property real, personal or mixed shall be taxed; but the Legislature may except such as may be held by the State, by counties cities or towns and used exclusively for public or corporation purposes, and such as may be held and used for purposes purely religious, charitable, scientific, literary or educational, and except $1,000.00 of personal property in the hands of each tax-payer and the direct product of the soil in the hands of the producer and his immediate vendee. All property shall be taxed according to its value, that value to be ascertained in such manner as the Legislature shall direct, so that taxes shall be equal and uniform throughout the State. No one species of property, from which a tax may be collect-

ed, shall be taxed higher than any other species of property of the same value. But the Legislature shall have power to tax merchants, peddlers, and privileges in such manner, as they may from time to time direct." This section of the Constitution was by the Supreme Court of Tennessee held to mean, that *no* property could in that State escape taxation, except such as was by the terms of the section permitted to be exempted. *Railroad Companies* v. *Gaines,* 7 Otto 697, where we find the judgment of the Supreme Court of Tennessee was affirmed.

In the brief of counsel for appellee our attention is particularly directed to this case to show, say they, " the difference between that Constitution and our own, and to show the inapplicability of the Tennessee cases on this subject relied on by counsel for the auditor."

Let us see if there is any material difference in the meaning of the language used. The *first* clause of the section declares : " All property real, personal and mixed shall be taxed." The *second,* provides for the exception to the rule. The *third* provides : " All property shall be taxed according to its value." The *fourth* provides how that value is to be ascertained, to wit, as the Legislature may direct. The *fifth* provides, that " taxes shall be equal and uniform throughout the State." The *sixth* provides, that no one species of property, from which a tax may be collected, shall be taxed higher than any other species of property of the same value. The *seventh* provides, that the Legislature shall have power to tax merchants, peddlers and privileges in such manner, as they may from time to time direct. The *first* clause of our Constitution provides the same as the *sixth* of the Tennessee Constitution, that " Taxation shall be equal and uniform throughout the State." The *second* the same as the *first* in the Tennessee : " All property, both real and personal, shall be taxed." The *third* the same as the *third* in Tennessee : " All property shall be taxed according to its value." The *fourth* the same as the *fourth* in the Tennessee Constitution provides how the value of the property is to be ascertained, to wit, as directed by law." The *fifth* the same as the *sixth* in the Tennessee provides, that one species of property of equal value shall not be taxed higher than another. The *sixth* corresponds to the

*second* in the Tennessee, which provides for the exception to the general rule. The seventh and last in the Tennessee Constitution is not in ours and throws no light upon the subject we are considering.

Here then we have six provisions in each of these Constitutions substantially the same, only arranged in a different order, but in no manner, as we conceive, to make the common sense of the language different in the one case from the other. The exception is different as to subjects in some respects, but must have the same effect in the one case as in the other upon the construction of the section. If one prohibits the Legislature from exempting property from taxation, that is not specially excepted, we think the other does with equal clearness.

It is also claimed by counsel for appellee, that the language used in the constitutions of Ohio and Arkansas, the construction of which we have noted, is essentially different in its force from that used in our Constitution. Ours declares: " Taxation shall be equal and uniform throughout the State, and all property both real and personal shall be taxed in proportion to its value, to be ascertained as directed by law,   *   * but property used for educational, &c.,   *   * purposes, and public property may by law be exempted from taxation." The Constitution of Ohio (and the Arkansas Constitution is similar) provides :  " Laws shall be passed, taxing by a uniform rule all moneys, &c.,   *   * and also all real and personal property according to its true value in money ; but burying grounds, &c.,   * * *  may by general laws be exempted from taxation."   What is the difference between the words, " Taxation shall be uniform, and *all* property both real and personal shall be taxed according to its value," and the words, " Laws shall be passed taxing by a uniform rule *all* property real and personal according to its value ?"   I confess I can see no difference in the meaning of the language. The prefix "Laws shall be passed taxing," certainly can make no difference, as we know, that not a dollar of taxation could be levied without "laws being passed" requiring it to be done. And when our Constitution used the language, " Taxation shall be equal and uniform throughout the State, and *all* property both real and personal shall be taxed according to its value," it was in fact

saying, that laws shall be passed taxing all property both real and personal by an equal and uniform rule according to its value." It is claimed, that our Constitution only provides for equality, uniformity and the *ad valorem* principle of taxation on the subjects selected by the Legislature for taxation. Do the Ohio and Arkansas Constitutions do more? If the only effect of our Constitution is to declare, that taxation shall be on the *ad valorem* principle, the Constitutions of these two States lay down no different rule; for the language of their Constitutions is just as susceptible of that interpretation as is the language used in our own Constitution.

It is contended by counsel for appellee, that the case of *Hunsaker* v. *Wright*, 30 Ill. 146, is a strong case in their favor, inasmuch as while the court held, that exemptions generally were prohibited, this prohibition did not prevent exemptions as a matter of contract and for a consideration. I have carefully examined that case, and I can see no countenance given to such an idea. The language used is very similar to that employed in the Ohio and Arkansas Constitutions. The court held, that under that Constitution there could be no exemption from taxation for any cause whatever, whether for a consideration or not. The court however did hold, that under the Constitution, under previous decisions of the court, which were followed in that case, the Legislature could commute the tax for an equivalent burthen. But if that decision is correct, (the question has been elsewhere decided differently) it requires no argument to show, that commutation of a tax for an *equivalent* and an *exemption* from taxation are entirely different. The case of *State* v. *North*, 27 Mo. 464, and the cases that preceded it in the Supreme Court of Missouri, as we have shown, clearly show, that the idea of equality and uniformity in taxation were not contemplated by the Missouri Constitution; that the declaration in that Constitution, that the lands of non-residents should not be taxed higher than the lands of residents of the State in the absence of a single word in the instrument to show, that taxation should be equal and uniform, showed, that the Legislature had the right except in the single instance named to make such discriminations, as it chose, among the subjects of taxation. The language in the Missouri Constitution is, that "all property sub-

ject to taxation in this State shall be taxed in proportion to its value." Instead of being like the language in our Constitution, it seems to me, it is essentially different. The phrase, " subject to taxation " occurring, where it does, might make it doubtful, whether it referred to the single exception occurring in a different section " no tax shall be imposed on lands, the property of the United States," or to what the courts decided it did mean " subjected to taxation by the Legislature."

There certainly is nothing in the decisions, that would amount to persuasive authority, that a declaration in a Constitution, that " *all* property real and personal shall be taxed in proportion to its value," means and only means, that " such property as is by the Legislature selected for taxation shall be taxed in proportion to its value;" that the Constitution was only designed to lay down a rule for the taxation of such subjects, as should be selected to bear the burdens of the government; and that rule was the *ad valorem* principle. Yet the Missouri case is made the foundation of Judge Anderson's opinion, to show that the provisions of the Virginia Constitution, similar to ours and essentially different from the provisions of the Missouri Constitution, were no inhibition on the Legislature to exempt what property it chose from taxation. Again Judge Anderson after coming to the conclusion, that there is no doubt about the meaning of the text of the Constitution, yet thought it necessary to further support his opinion by referring to the provisions of the Virginia Constitution of 1850 and what was done under it. He says, page 243:

" The Constitution of 1850 contains the same provision, except as to county and corporate bodies and other matters, which do not affect this question. The language is, ' taxation shall be equal and uniform throughout the commonwealth, and all property, other than slaves, shall be taxed in proportion to its value, which shall be ascertained in such manner as may be prescribed by law.' Under that Constitution exemptions of property from taxation were frequently made; and I am not aware, that the constitutionality of those exemptions has ever been even questioned. They were sustained by judicial construction, before the provision of the Constitution of 1850 was copied into the present Constitution of the State,

and must be held to have been adopted by the framers of the present Constitution, as it had been understood by the unquestioned legislative construction and action, and the usage of the country, and by judicial construction, before it was engrafted into the present Constitution. The Legislature by the act of ——, 1856, exempted the property' of the Alexandria and Orange Railroad Company in the city of Alexandria from taxation; and in *Alexandria and Orange Railroad Company* v. *City of Alexandria*, 17 Gratt. 176, the court held, the distinguished jurist, Judge Joynes, delivering the opinion, that whilst the property of the railroad company was exempt from taxation by the State, it was not, exempt from taxation by the city corporation, the court construing the exemption by the act of the General Assembly, as limited to taxation by the State."

An examination of the opinion of Judge Joynes will disclose the fact, that he did not at all discuss the constitutionality of the act of the Legislature, to which he was giving a judicial construction; and the constitutionality of the act in that case was not called in question for the obvious reason, entirely overlooked by Judge Anderson, that by section 23 of article IV of the Constitution of 1850 it is provided in clear and explicit language, that "*other taxable property may be exempted from taxation by a majority vote of the whole number of members elected to each house of the General Assembly.*"

We could not approve the opinion of Judge Anderson, were it the unanimous opinion of the court; but when we see, that it was the opinion of only two members of the court out of four who sat in the case, and that one of the others dissented, and the fourth refused to express any opinion on the subject, not deeming it involved in the case, and looking too into the foundation, upon which the opinion is based, it can have no influence whatever upon our minds. I have paid this much attention to the opinion, only because it was so largely quoted from in the brief of the learned counsel for appellee, as well as earnestly relied upon in their elaborate oral arguments in the cause.

The case of the *Commonwealth* v. *Chesapeake and Ohio Railroad Co.*, 27 Gratt. 352, and 4 Otto 718, can have no influ-

ence in the decision of this case, because the constitutionality of the act in question in that case was not raised or discussed.

Our attention has been called to section 5 of Article VIII of the Constitution of 1863. We have examined and considered this section and conclude, that it has no reference whatever to the subject of taxation.

No authority, to which we have been cited, or which we have found, sustains the constitutionality of so much of the seventh section of the act of March 1, 1866, as exempts the property therein mentioned from taxation. Can there be any doubt, that the said act to this extent is in violation of the Constitution of 1863? The section of the Constitution we have been considering declares, first, that "taxation shall be equal and uniform throughout the State." This is very strong language and, to say the least of it, would prevent inequality and want of uniformity in taxing the subjects, which the Legislature might declare should be taxed. But the *second* clause, "and all property both real and personal shall be taxed," certainly shows, that it was the intent of the framers of the Constitution to declare in most explicit terms, that *all* property in the state should bear its equal share of the burdens of the Government, and that there should be no property exempted from taxation, unless it was specifically excepted in the Constitution itself. The sense of the sentence requires, that this language must be considered a clause of the section, although only separated from the next clause by a comma. The *third* clause declares, that taxation shall be on the *ad valorem* principle. "All property *real* and *personal* shall be taxed." Upon what principle? Shall be taxed "in proportion to its value." How shall this value be ascertained? The *fourth* clause gives the answer in clear language, "to be ascertained as directed by law." The *fifth* clause prevents any discrimination in taxing different species of property and makes it more clear, that taxation should be uniform and on the *ad valorem* principle by declaring, that "no one species of property, from which a tax may be collected, shall be taxed higher than any other species of property of equal value." The words in this clause, "from which a tax may be collected," clearly refer to the fact, that certain property may be exempted as provided for in the *sixth* and last clause of the sec-

tion, which provides : " But property used for educational, literary, scientific, religious or charitable purposes, and public property, may by law be exempted from taxation." This last clause is plainly an exception to a general rule. The primary meaning of the word *but,* is *except;* and that is manifestly the sense in which it is here used. As it appears in the section, to give it any other meaning would not make sense. The rule laid down is, that " *All property,* both real and personal, shall be taxed;" and the exception, "which proves the rule," is, that the Legislature might exempt from taxation certain property therein enumerated, but certainly would not have the authority to exempt any other property even for a consideration.

If the last clause of the section is not an exception to the *general rule laid down,* "that all property both real and personal shall be taxed," then it has no force whatever, and is as contended mere surplusage. It cannot in any way be considered surplusage; it is not supposed, that the framers of the Constitution would use, and the people adopt, language, that had no meaning. This is full of meaning. It permits the Legislature to exempt certain property from taxation, which by the general rule it would have been beyond their power to exempt. It occurs in the same section with the rule; and there cannot be the slightest doubt, that it was intended as an exception to it. In the Virginia Constitution the exception is in a separate section. The language there used in the third section is: " The Legislature may exempt," etc. This, I think, was clearly intended as an exception to the general rule laid down in the first section, which declares, that " all property both real and personal shall be taxed, in proportion to its value." Yet it is treated by Judge Anderson in his opinion, 33 Gratt. 244 *supra,* as a grant of power, and not as an exception to the general rule. It certainly could not properly be considered a grant of power, because, as we have already seen, the right of exemption is inherent in the Legislature and remains, unless taken away by the Constitution. But, as we have already seen, the exception in our Constitution is contained in the section, which prescribes the general rule, and it is clear that it must be regarded as an exception to the general rule and nothing else. By the construction, which

we put upon this section of the Constitution, we give effect to every clause, every sentence and every word contained therein.   By the interpretation, which is sought to be put upon it by the learned counsel of the appellee, much of the section would be entirely meaningless.

The language of the Constitution being clear and free from ambiguity, and the words used, due regard being had to their grammatical construction, embodying, as they do, a definite meaning, which involves no absurdity and no contradiction between different parts of the same instrument, the meaning apparent on the face of the instrument is the one, which alone, we are at liberty to say was intended to be conveyed, and we are not at liberty to look beyond the instrument itself.   If we should do so, in the language of Mr. Justice Bronson in *People* v. *Purdy*, 2 Hill 35: "in this way a solemn instrument—for so I think the Constitution should be considered—is made to mean one thing by one man and something else by another, until in the end it is in danger of being rendered a dead letter ; and that too, where the language is so plain and explicit, that it is impossible to mean more than one thing, unless we first lose sight of the instrument itself, and allow ourselves to roam at large in the boundless fields of speculation.   For one I do not venture upon such a course.   Written constitutions of government will soon come to be regarded as of little value, if their injunctions may be thus lightly overlooked ; and the experiment of setting a boundary to power will prove a failure."

Much respect as we have for the Legislature, a co-ordinate branch of the government, we must pay greater respect to the sovereign will of the people expressed in the Constitution, which they have adopted for their own government.   And where the court sees, that the Legislature has plainly violated that instrument, it is the highest duty of the court, plainly required by the written Constitution, which it is its sworn duty to support, to pronounce such act of the Legislature unconstitutional.   We therefore do pronounce the last clause of section 7 of the act of the Legislature passed March 1, 1866, which declares, that "no taxation upon the property of the said company shall be imposed by the State, until the profits of said company shall amount to ten per cent. on the capital of the company," to be clearly prohibited by section 1 of ar-

ticle VIII of the Constitution of 1863, and therefore unconstitutional and void. Having arrived at this conclusion, it is immaterial to inquire, whether the appellee, the Chesapeake and Ohio Railway Company, took the benefit of said act under the sale and conveyance to it. So all other questions raised and not decided become immaterial. There was no contract made with any person or corporation by said last clause of section 7 of the act of March 1, 1866; and of course no benefits under that clause of the section could pass to any one.

The decree rendered in this cause on the 6th day of June, 1881, by the circuit court of Ohio county is reversed at the costs of the appellee; and this Court proceeding to render such decree, as said court should have rendered, the injunction granted in this cause on the 7th day of January, 1880, is wholly dissolved, and the complainant's bill is dismissed at its costs.

JUDGES HAYMOND AND GREEN CONCURRED.

DECREE REVERSED.   BILL DISMISSED.