# THE STATE OF NEVADA ex rel. JOHN C. LEWIS v. LEWIS DORON.

POWER OF CONTROLLER TO AUDIT CLAIMS. It is the right and duty of the State Controller to audit all claims coming under the provisions of the Act of March 3d, 1869. (Stats. 1869, 158.)

PRESUMPTIONS IN FAVOR OF STATUTES. Every statute is to be upheld, unless plainly and without reasonable doubt in conflict with the Constitution.

ORDINARY SENSE AND IMPORT OF WORDS. The Constitution is to be construed in the ordinary sense and usage of language, literally, unless some apparent absurdity, or obvious and manifest violation of the sense of the instrument, or unmistakable intent of its framers, forbids.

CONSTITUTIONAL DUTIES OF CONTROLLER. The official name of "State Controller," as used in the Constitution, implies recognized duties appurtenant thereto, and means a supervising officer of revenue—among whose duties is the final auditing and settling of all claims against the State.

Lewis *v.* Doron.

DEBATES OF CONSTITUTIONAL CONVENTION. In the examination of constitutional questions, the debates of the constitutional convention may be consulted, as throwing light upon the subject; but they are not authoritative nor of any binding effect—it having been the text only that was adopted.

CONSTITUTIONAL CONSTRUCTION. In construing a Constitution, the thing to be sought is the thought expressed.

EXAMINING POWERS OF EXAMINERS AND CONTROLLER. As the Constitution provides that "no claims against the State (except salaries or compensation of officers, fixed by law) shall be passed upon by the Legislature, without having been considered and acted upon by said Board of Examiners," (Const., Art. V, Sec. 21) it follows that the constitutional power of the Controller to examine such claims must be exercised, subject to such examination by the Examiners.

EXAMINING POWERS ONLY ADVISORY TO THE LEGISLATURE. The examining powers of the Board of Examiners and of the Controller are, with reference to the Legislature, only advisory.

CONCURRENCE OF EXAMINERS AND CONTROLLER. So far as the examination of claims against the State is concerned, the Board of Examiners assist the Controller, acting concurrently; but they do not deprive him of his constitutional power or any portion of it. Each moves in a designated sphere—all tending to the desired result: the protection of the revenues of the State.

CONSTITUTIONALITY OF ACT RELATING TO CONTROLLER. The Act of 1869, relating to the duties of the Controller, (Stats. 1869, 158) which provides for the auditing of claims by him after they shall have been passed on by the Board of Examiners, etc., neither takes anything away from the constitutional powers of the Board of Examiners, nor adds anything to those of the Controller, and is not unconstitutional.

CLAIM ALLOWED BY EXAMINERS TO BE PRESENTED TO CONTROLLER. Where a member of the Board of State Printing Commissioners had a claim for his services passed upon and allowed by the Board of Examiners, but omitted to have it audited by the Controller; and the latter, for that reason, refused to issue his warrant upon the treasury for the amount so allowed: *Held*, that it was necessary to show a presentation of the claim for allowance to the Controller; and that, without such showing, the Controller would not be compelled by *mandamus* to issue his warrant.

THIS was an original proceeding by petition for the writ of mandamus in the Supreme Court. It was commenced on February 17th, 1870. The relator sets forth his selection on March 10th, 1869, by the Controller and Secretary of State, as an expert in printing and a member of the Board of State Printing Commissioners; that he thereupon entered upon the discharge of his duties; that his compensation was fixed at eight dollars per diem; that on January 1st, 1870, he presented his bill of nineteen hundred and sixty dollars for services to the Board of Examiners; that they

allowed it; that he then transmitted it to the defendant, the Controller of State, for his action; that an appropriation had been made by the Legislature for the payment of such services; that he had demanded of the Controller to draw his warrant on the treasury for the sum so allowed by the Examiners; and that the defendant had refused and still refused to do so.

To this petition the defendant interposed a demurrer, on the ground that the petition did not state facts sufficient to constitute a cause of action, or to entitle petitioner to the relief demanded.

*A. C. Ellis*, for Relator.

I. The Acts of March 3d, 1869, in relation to the duties of the Board of Examiners and of the Controller, (Stats. 1869, 116 and 158) are unconstitutional and void. They impose upon the Controller the same duties, and grant to him the same powers, which are granted to and vested in the Board of Examiners, by the Constitution (Const., Art. V, Sec. 21; Debates, 161). A power vested in, or duty imposed upon, an officer by the Constitution, excludes by necessary implication any power in the Legislature to vest the same, or concurrent power in, or to impose the same, or concurrent duties upon, any other officer of the State. (*State ex rel. Crawford* v. *Hastings*, 10 Wis. 525; 15 N. Y. 532; *People* v. *Draper*, 8 N. Y. 483; *Warner* v. *People*, 2 Denio, 275.)

Where a power is distinctly granted, by the Constitution, to a particular officer, or department of the government, the Legislature cannot confer such power upon some other officer of the government. Nor can they, indirectly, deprive the officer designated of the full and complete exercise of such power, by vesting a concurrent power in some other constitutional officer, or legislative officer, and throwing by statute such limitations and checks around the exercise of the power granted by the Constitution as to render it ineffectual, thus defeat the plain intent of the fundamental law. This would be doing indirectly that which cannot be done directly.

II. That the constitutional power of the Board of Examiners has been trenched upon—nay, that the Board has been absolutely deprived of its constitutional power, in certain cases, by the Act of

1869, is too plain for argument. The Act confers upon the Controller all the powers which the Constitution confers upon the Board of Examiners, and provides that any examination they (the Board) may make of claims against the State, which have been authorized by law, and for the payment of which an appropriation has been made, and any action they may take as such Board, shall be of no effect, until the same has been reviewed and approved by some other person, to wit: the Controller.

When the Constitution-makers said that the Board of Examiners should have power to examine all claims against the State, except salaries or compensation of officers fixed by law, they intended, in effect, to make it an Auditing Board; they intended that such Board, by the power conveyed in this clause of the section, should take action upon all claims against the State, (save the exceptions mentioned); that is to say, they should have the power to allow, or reject, the class of claims in this clause referred to. Clearly, they have the power to examine, and—nothing in the Constitution to the contrary—the sole power to examine claims and accounts against the State, except such as, by the independent succeeding clause, have to be acted upon by the Legislature, before final payment. In other words, they have the sole power to examine all claims which the Legislature have authorized to be made against the State, for any given thing, and for the payment of which an appropriation has been made.

It has been suggested that they have the express constitutional power, and the sole constitutional power, to examine all claims, but that the Constitution does not grant them any power to allow or reject any claim: therefore, they cannot allow or reject any claim, which has been provided for by law, unless specially authorized so to do by the Legislature; and all power in this respect being in the Legislature, it may impose such limitations and restrictions upon the Board, and make its action subject to the will or caprice of some other legislative or constitutional officer or person.

We insist upon the more natural and more sensible construction—the one more in consonance with law and sound reason: that when anything is granted, all the means to attain it, and all the fruits and effects of it, are granted also, and shall pass inclusive, together

with the thing, by the grant of the thing itself. (Broom's Legal Maxims, 427.)

III. Again: By this Act the Legislature has provided that unless the Board act within thirty days after the presentation of any claim, the claim shall be transmitted to the Controller, for his final action in the premises; and that after the lapse of thirty days, and such transmission to the Controller, the Board of Examiners shall have no jurisdiction of such account. It is plain that in many cases of claims against the State, from the difficulty of procuring testimony, it would be impossible for such Board to act at all within thirty days; in which event they would be totally deprived of the power to examine such claim, and for this reason also the Act is unconstitutional.

IV. In the event the Court should believe that relator's claim is exempt from the provisions of the Acts in relation to the Board of Examiners, the Controller should still draw his warrant, for the reason that relator is an officer, whose compensation has been fixed in accordance with law; and nothing is left to be ascertained but the time of service. The law fixes this; and the Controller has no more power over it, than he has over the compensation or salary of any constitutional officer.

V. Under our Constitution the Board of Examiners are *ex officio* Auditors; and it is their exclusive right and duty to ascertain and fix the amount of all claims against the State, except salaries or compensation of officers fixed by law. The duties of Controller, from the character of his office, are totally different from those of an Auditor. (Burrill's Law Dic., titles Auditor and Controller; Webster's Dic., words "Auditor and Controller"; 16 Cal. 53.)

*R. S. Mesick* and *J. Seely*, for Defendant.

I. The petition ought to show that the claim of the relator was based upon such facts as to make it appear to be just and valid against the State. As ground for this writ, he has undertaken by his petition to show not only an act of the Board of Examiners in his favor, but also the basis of his claim presented to the Board.

But the petition does not show, in terms, that the Board ever did examine the claim, or that the relator ever performed a single day's service as expert in printing, for which he claims a per diem compensation.   Assuming that its allowance by the Board might, in some cases, raise such a presumption of merit in a claim as to justify the Courts in ordering its payment by the State officers, upon the bare showing of the fact of such allowance, still, whenever the claimant in his petition does not rely upon that fact alone, but enters into a showing of the ground of his claim, he must show enough to make the claim appear just and legal for the amount claimed.   Or in other words, in such a case the Court should presume that the omission to state facts necessary to make the claim appear meritorious is on account of the non-existence of those facts. The omission in this case to show the number of days, or any period, of service by the relator as printing expert, we contend, justifies the Court in withholding the peremptory writ demanded, on the face of the petition itself.

II.  " Power to examine all claims against the State," etc., given to the Board of Examiners, is not to be considered as prohibitory of any investigation on the part of anybody else intrusted by the Constitution or the Legislature with control over or care of the moneys of the State.   The language of the section of the Constitution referred to shows that the legislative action upon such claims may be had, and is contemplated by the Constitution.   And such legislative action must be considered either as in review of the action of the Board, or as the supplement of the action of the Board necessary to a conclusive decision.

The language of that section of the Constitution shows that the functions of the Board of Examiners, in reference to claims against the State, are to take evidence in support of and against such claims, examine and report them, with the testimony and its conclusions, to the Legislature of the State, or to some committee or person directed by the Legislature to aid in maturing the matter of the claim for final rejection or payment.

And as the Legislature might constitutionally require as a condition of payment, that all claims should be passed upon by the

Lewis v. Doron.

Legislature after "having been considered and acted upon by the 'Board of Examiners,'" why might it not, in lieu of its own action, direct, as is done in the statute referred to, that some financial officer of the State, as the Controller, whose duties the Legislature must prescribe, shall scrutinize or look into such claims as a condition of their payment, without being "passed upon by the Legislature?"

III. The drawing of warrants is not an act directed by the Constitution to be done. It is a pure legislative direction. Some other mode than by a Controller's warrant might have been provided by the Legislature for drawing money out of the State treasury. But as it is, the drawing of Controller's warrants is so far under the control of the Legislature, that that body is fully competent to prescribe any reasonable conditions looking toward the safety of the State funds, upon which the Controller may issue his warrants. If the Legislature can require all claims to be passed upon by itself before payment, it certainly can provide that the Controller shall not draw his warrant simply upon the action of the Board of Examiners. And if the Legislature has waived its action upon the claim of the relator, and authorized a Controller's warrant to be drawn for the amount of his claim notwithstanding its non-action, but upon the condition that the Controller shall first pass upon the right of the relator to have such warrant, he cannot say that his claim shall not be passed upon by either the Legislature or Controller. If he will not tolerate the action of the Controller upon his claim, the Legislature has said, in effect, that he shall have no Controller's warrant, and he is remitted to the action of the next Legislature.

By the Court, WHITMAN, J.:

The relator, by his affidavit, shows that he is a member of the Board of State Printing Commissioners of the State of Nevada, filling the position of Expert and Secretary. That he has been allowed for his services in such capacity, by the State Board of Examiners, the sum of nineteen hundred and sixty dollars. That such allowance has been reported by the Board to defendant, the

State Controller; who, although requested, refuses to issue his warrant upon the treasury for the amount allowed.

A mandamus to compel such issuance is prayed. Upon the affidavit an alternative writ was ordered; and defendant appearing, demurs to the sufficiency of the affidavit, upon the general ground that it does not state facts sufficient to constitute a cause of action. Several specifications are made; but the only one important to be considered, is that based upon the neglect of relator to aver that his claim had either been audited by the Controller, or that request had been made for such action.

The point made upon argument, that relator's claim is in the nature of a salary, and therefore exempt from action either of Board of Examiners, or Controller, will not be considered in this opinion, for the reason that the affidavit charges no breach of duty by defendant, based upon any such hypothesis.

The position taken by defendant is, that, as Controller, it is his right and duty to audit all claims coming under the provisions of the statute entitled "An Act to amend an Act entitled 'An Act defining the Duties of the State Controller,' approved February 24th, 1866," passed March 3d, 1869. This Act is as follows:

"Section 1. Section five of the above entitled Act is hereby amended, so as to read as follows: Section five. He shall audit all claims against the State for the payment of which an appropriation has been made, but of which the amount has not been definitely fixed by law, and which shall have been examined and passed upon by the Board of Examiners, or which shall have been presented to said Board, and not examined and passed upon by them with[in] thirty days from their presentation; and he shall allow of said last mentioned claims, (not passed upon by the Board of Examiners within said thirty days after *after* presentation) the whole, or such portion thereof as he shall deem just and legal; and of claims examined and passed upon by the Board of Examiners, such an amount as he shall decree just and legal, not exceeding the amount allowed by said Board. And no claim for services rendered or advances made to the State, or any officer thereof, shall be audited or allowed, unless such services or advancement shall have been specially authorized by law, and an appropriation made for its pay-

ment.   For the purpose of satisfying himself of the justness and legality of any claim, he shall be allowed to examine witnesses under oath, and to receive and consider documentary evidence in addition to that furnished him by the Board of Examiners.   He shall draw warrants on the Treasurer for such amounts as he shall allow of claims of the character above described, and also for all claims of which the amount has been definitely fixed by law, and for the payment of which an appropriation shall have been made." (Stats, 1869, 158.)

Opposing this position, the relator contends that the Act cited is unconstitutional, for that it attempts to take away from the Board of Examiners the power expressly conferred upon them by the Constitution, of auditing all claims against the State.   It is confessed that no attempt has been made to have this claim audited by the Controller, and for the reason that, having been allowed by the Board of Examiners, it is in all respects a liquidated demand, entitled to payment without further examination, and upon which a warrant should presently issue.

In reply, defendant says that the power claimed for the Board of Examiners is greater than exists by virtue of the Constitution; and that, by that instrument, he is made the ultimate and final auditor of all claims requiring such action.

The sections of the Constitution relied upon by the parties are as follows:

" Sec. 19.   A Secretary of State, a Treasurer, a Controller, a Surveyor General, and an Attorney General, shall be elected at the same time and places, and in the same manner, as the Governor.   The term of office of each shall be the same as is prescribed for the Governor.   Any elector shall be eligible to either of said offices.

" Sec. 21.   The Governor, Secretary of State, and Attorney-General   *   *   *   shall also constitute a Board of Examiners, with power to examine all claims against the State, (except salaries or compensation of officers fixed by law) and perform such other duties as may be prescribed by law.   And no claim against the State (except salaries or compensation of officers fixed by law) shall be passed upon by the Legislature, without having been con-

sidered and acted upon by said 'Board of Examiners.'" (Const. Art. V.)

Premising that every statute is to be upheld, unless plainly and without reasonable doubt in conflict with the Constitution; that the Legislature has power to pass any law, not positively prohibited, or by clear implication forbidden by the Constitution; and that such instrument is to be construed in the ordinary sense and usage of language—literally, unless some apparent absurdity, or obvious and manifest violation of the sense of the instrument, or unmistakable intent of its framers forbids; and that it is not allowable to interpret what has no need of interpretation: it would seem that the question presented was of no difficult solution.

Looking at the section first referred to, it will be seen that an officer called a " Controller " was provided for. His duties are not otherwise specified, than by the name of his office; and nothing, save this, is anywhere said concerning them in the Constitution— except as follows :

" Sec. 21. The Secretary of State, State Treasurer, State Controller, Surveyor-General, Attorney-General, and Superintendent of Public Instruction, shall perform such other duties as may be prescribed by law." (Const., Art. V.)

Nor are any duties, save in the manner suggested, prescribed in the Constitution for the Treasurer or Surveyor-General. Why, then, say that they and the Controller shall perform such other duties as may be prescribed by law, if no duties have been mentioned ? Evidently, because the official name implies recognized duties appurtenant thereto. This, probably, will be undisputed as to the first two named officers. A little examination will show that it is equally clear as to the Controller.

Upon review of the Constitution and statutes of the different States of this Union, it will be found, that in a large majority some supervising officer of revenue is provided for—among whose duties is the final auditing and settling of all claims against the State ; and in all cases where such distinctive officer exists, he is called, indifferently, " Controller of Public Accounts," "Auditor," " Controller-General," "Auditor-General," "Auditor of State," "Auditor of Public Accounts," or " Controller." For instance : in Alabama,

Connecticut, and Texas, he is styled " Controller of Public Accounts " ; in Arkansas, Indiana, Kansas, Minnesota, and Ohio, he is styled "Auditor " ; in Georgia, " Controller-General " ; in Michigan, "Auditor-General " ; in Iowa, Missouri, and Rhode Island, "Auditor of State," or " State Auditor " ; in Illinois, Kentucky, Mississippi, Oregon, and Virginia, "Auditor of Public Accounts " ; in California, New York, and Nevada, " Controller." This, then, being the received use in the States of this Union of these official names, it follows that the Constitutional Convention of Nevada thus used the term " Controller," unless the instrument itself negatives such presumption. Of that hereafter.

So far as the sections touching the Controller are concerned, they sustain this position : first, in naming the officer ; second, in suggesting other duties, when none had before been named, unless they followed and attached to the titular designation of such officer.

It is not improper in this connection to examine the debates upon the subject, though of course they are not authoritative, nor is any binding effect to be given them—as it is the text of the Constitution which the people adopted. It appears that it was proposed in Convention to strike out the words " State Controller," and substitute "Auditor of State," in order that there might be no necessity of altering the territorial statutes defining the duties of the office, and for no other reason. Upon suggestion, however, that such difficulty could be obviated in the schedule, the motion was lost—every member who spoke upon the question, however, agreeing that the names were synonymous. (Debates, 613–14.) Following the suggestion made, it was provided in the schedule that * * " The Territorial Auditor shall continue to discharge the duties of his said office until the time appointed for the qualification of the State Controller." (Const., Art. XVII, Sec. 14.)

The relator, however, contends that the word " Examiners " means "Auditors ; and that the powers incident to the name, being specially conferred, are taken from the Controller. Admit the proposition as to the meaning of the word, yet the conclusion does not follow : for the Board of Examiners might be Auditors, and still the Controller be, as his name implies, Chief Auditor. There are Auditors known in the Federal Government and elsewhere,

27

of various grades. But why seek to interpolate a word into the Constitution, or give to a word already there a meaning not absolutely clear, when by a literal reading the various sections are harmonious? In construing a Constitution the thing to be sought is the thought expressed.

The Constitution of the State of Nevada says, that * * " No claim against the State (except salaries or compensation of officers fixed by law) shall be passed upon by the Legislature, without having been considered and acted upon by said ' Board of Examiners.' " Why? As a restriction of legislative power. It having all law-making power not taken away, could perhaps have entirely ignored the Board of Examiners, in absence of some prohibitory language—such was the view under which the clause quoted was offered. (Debates, 161.)

Such prohibition was unnecessary as to the Controller, as he possesses only such powers as the Constitution confers upon him—therefore, when that instrument empowers the Board of Examiners to examine all claims, he must exercise his power subject to such examination. What is this examination? Confessedly, by the words used, and as admitted by counsel on the argument of this case, with reference to the Legislature, only advisory.

Why greater or higher toward the Controller? Because, says counsel, otherwise there arises one of two absurdities: Either there is a Board with power only to examine—which is a nugatory, idle matter—or else, there is a Controller with power to allow, but no power to examine.

As to the first proposition be it said, that with reference to the Legislature only such idle and nugatory power, if such it be, exists; and it can involve no more absurdity in one case than in the other. But such power is neither idle nor nugatory. It may and probably does materially assist both the Legislature and Controller. It serves to give a fuller airing and ventilation of claims, than might or probably would follow from one examination—and to that extent, throws additional restraints and safeguards around the treasury.

The second objection has no existence, provided the definition of the word " Controller," before given, be correct. The Board is advisory; he is chief. They assist in his onerous duties—acting

concurrently, so far as examination is concerned : but they do not deprive him of his constitutional power, or any portion of it. Each moves in a designated sphere—all tending to the desired result: the protection of the revenues of the State.

It cannot with propriety be claimed that an absurd meaning should be given any constitutional clause, when such result can properly be escaped—and here no absurdity arises, if words be read in their ordinary and usual sense.

It is argued that this view deprives the Board of Examiners of all power, and places them in a subordinate position. By no means. The power granted is great and useful ; and though its magnitude would be increased by the opposite view, its usefulness would be diminished—as in that case, the Board would be the sole tribunal, before which claims against the State would be examined: while, on the other hand, the investigation is double, consequently more searching and protective.

It must be remembered that this Board is composed of State officers, having other high and responsible duties imposed and powers given by the Constitution—this matter of examining claims being only in addition thereto ; so if there be any force in the argument that they are rendered subordinate, still such subordination is in only one particular, outside of the special powers pertaining to their general official position, and the point taken would therefore seem to have more force as applied to the Controller, who, although equally a constitutional officer, and naturally, it would be supposed, created for some important purpose in the State administration, would be the veriest clerk, if it be held that the Examiners are the sole auditors. Possibly such was the intention ; but it would be taking a bold and rash step to thus emasculate the official function of a constitutional officer without the clearest expression. To do so by implication would be without warrant.

Such arguments, however ingenious, can lend no aid to the proper reading of a Constitution, save so far as they may tend to point the thought sought to be expressed by its framers. Is this or any extraneous aid necessary in this case ? The Court of Appeals of New York has well stated the rule within which this case comes, saying:

" Whether we are considering an agreement between parties, a statute, or a constitution, with a view to its interpretation, the thing we are to seek is the thought which it expresses. To ascertain this, the first resort in all cases is to the natural signification of the words employed, in the order and grammatical arrangement in which the framers of the instrument have placed them. If, thus regarded, the words embody a definite meaning which involves no absurdity, and no contradiction between different parts of the same writing, then that meaning apparent upon the face of the instrument is the one which alone we are at liberty to say was intended to be conveyed. In such a case there is no room for construction. That which the words declare is the meaning of the instrument ; and neither Courts nor Legislatures have the right to add or to take away from that meaning. This is true of every instrument ; but when we are speaking of the most solemn and deliberate of all human writings, those which ordain the fundamental law of States, the rule rises to a very high degree of significance. It must be very plain—nay, absolutely certain—that the people did not intend what the language they have employed, in its natural signification, imports, before a Court will feel itself at liberty to depart from the plain reading of a constitutional provision." (*Newell* v. *The People*, 3 Seld. 97.)

It is further urged that the word " examine," if not directly expressing, yet necessarily implies the power of allowance or rejection which is consequently taken from the Controller. If such be the implication, still, pursuing the same train of reasoning, and following the same authority as before, it is a primary action subject to the ultimate and final decision of the Controller. Whether the word carries with it the additional meaning as claimed or not, still, as the Legislature has the power to establish any condition precedent to the obtaining a warrant on the treasury, so that the Constitutional power of the Controller is not trenched upon, nor any constitutional right of a claimant infringed, it is perfectly legitimate to provide that the Board of Examiners shall, upon investigation of claims, allow or reject the same—subject, of course, to the final revision of the Controller. Such seems to be the object of the statute under review. It takes nothing away from the constitutional

power of the Examiners, and adds nothing to those of the Controller; nor does it deprive a claimant of any right.

Such was not the case in the Wisconsin Statute, commented on in *The State ex rel. Crawford* v. *Hastings,* (10 Wis. 525) cited by counsel for relator. The statute there considered attempted, at least so the Court thought, to virtually supersede a constitutional officer and deprive him of his legitimate authority. The reasoning of the opinion, however, applies with force to the case at bar, in the view here taken.

By the Constitution of Wisconsin, the Secretary of State was made "*ex officio* Auditor"; no duties were prescribed, but the Court held that this official designation carried with it a positive delegation of powers, among which was the auditing of all accounts and demands against the State. Now it has been seen that, as used in the Constitutions and statutes of the States of this Union, the words "Auditor" and "Controller" are synonymous; therefore, upon the reasoning of the Court referred to, the official designation of Controller, in the Constitution of the State of Nevada, of its own force, was a positive delegation of the powers usually incident to the office of Controller, Auditor, Controller-General, Auditor-General, or any of the various names used to designate a like officer. It would be violating the plainest rules of constitutional construction to attempt to take away this recognized power, because, in addition to this superior officer, the framers of the Constitution had provided a Board who should "examine" all claims against the State.

As has been said, such provision was undoubtedly wise and just, and in strict harmony with the evident attempt pervading the entire instrument—to guard the people's money. Using the word "Controller," a specific and defined meaning was expressed, comprising many powers, among which is the examination and allowance of claims against the State.

In section twenty-one, article four, of the Constitution, as touching the Board of Examiners a specific power is conferred, subject to the higher authority, which could be legitimately amplified by legislative action, in any direction not opposed to its nature, nor

Lewis *v.* Doron.

subversive of the positive power delegated the Controller by virtue of his official designation.

Turning to that portion of the statute attacked, which is applicable to this case, it will be seen that the Legislature provides that the Controller " shall audit all claims against the State for the payment of which an appropriation has been made, but of which the amount has not been definitely fixed by law, and which shall have been examined and passed upon by the Board of Examiners " * * * * *. This enactment is not in violation of the Constitution, but, as has been seen, strictly in conformity therewith.

As the relator has failed to state a compliance with the portion of the law last quoted, he has consequently failed to state a sufficient cause of action, and therefore the demurrer is well taken. It was understood, upon the argument, that the relator could not amend in this regard; but to save all question, he will be allowed time.

The order of the Court is that the demurrer be sustained, with leave to relator to amend within ten days.

Let it be so entered.