# THE SUPREME COURT

#### OF THE

## STATE OF NEVADA

### OCTOBER TERM, 1910

[No. 1924]

## Ex Parte SHELOR

1. FINES—SUSPENDING COLLECTION—POWER OF GOVERNOR.

In view of the constitution (art. 5, sec. 14) providing that the governor, justices of the supreme court, and attorney-general, or a majority of them, of whom the governor shall be one, may remit fines and forfeitures, commute punishments, and grant pardons, section 13, providing that the governor can suspend the collection of fines and forfeitures and grant reprieves for not exceeding sixty days dating from the time of conviction, authorizes the governor to suspend the collection of fines for only sixty days, and not indefinitely, as this would create a conflict between the two sections.

2. CONSTITUTIONAL LAW—CONSTRUCTION.

As an aid to determining the meaning of a provision of the constitution intended by its framers, the proceedings and debates in the constitutional convention may be considered.

3. FINES—SUSPENDING FINES.

The governor having under the constitution (art. 5, sec. 13) power to suspend a fine for only sixty days, his order attempting to make an indefinite suspension is void *ab initio*, and not valid for sixty days.

ORIGINAL PROCEEDING. Application of Douglass Shelor

for a writ of *habeas corpus*. **Denied,** and petitioner remanded to custody.

The facts sufficiently appear in the opinion.

*Horatio Alling*, for Petitioner:

The sole question raised by the demurrers is: Do the words of section 13, article 5, of the state constitution, "for a period not exceeding sixty days dating from the time of conviction," qualify the first clause of the section: 'The governor shall have power to suspend the collection of fines and forfeitures.' "

I. As in oral argument, so here, the petitioners at the outset invite the court's attention to a few well-recognized rules of constitutional construction in the light of which the question involved should be considered and determined.

*First*—If interpretation will reveal the true sense of the text, construction will not be resorted to unless there be contradiction to be avoided.

For a clear announcement of this rule, see Cooley, Const. Lim., 6th ed. pp. 51, 52. On pages 69 and 70, Mr. Cooley quotes approvingly from *United States* v. *Fisher*, 2 Cranch. 358, as follows: "Where the law is plain and unambiguous, whether it be expressed in general or limited terms, the legislature should be intended to mean what they have plainly expressed, and consequently no room is left for construction."

See, also, the opinion of Justice Johnson in *Newell* v. *People*, 7 N. Y. 9, 97; and *Lewis* v. *Doron*, 5 Nev. 399, 412.

When unambiguous, express words control. (*Bowland* v. *Hildreth*, 26 Cal. 161; *Smith* v. *Thursley*, 28 Md. 244; *Minn. P. Ry. Co.* v. *Silbey*, 2 Minn. 13; *Donaldson* v. *Harvey*, 3 Har. & McH. 12.)

*Second*—If ambiguity, absurdity or contradiction justify a resort to the processes of construction, it should be attempted only in the light of certain principles of construction, a few of which are:

"It is not to be supposed that any words have been employed without occasion, or without intent that they

should have effect as part of the law.   Effect is to be given, if possible, to the whole instrument, and to every section and clause.   If different portions seem to conflict, the court must harmonize them, if practicable, and must lean in favor of a construction that will render every word operative, rather than one which may make some words idle and nugatory."   (Cooley, Const. Lim., 6th ed., p. 72; Am. & Eng. Ency. Law, vol. 6, p. 924, note 8.)

"This rule is applicable with special force to written constitutions, in which the people will be presumed to have expressed themselves in careful, measured terms, corresponding with the immense importance of the powers delegated, leaving as little as possible to implication. It is scarcely conceivable that a case can arise where a court would be justified in declaring any portion of a written constitution nugatory because of ambiguity." (Cooley, Const. Lim., 6th ed., p. 72.)

Where courts are called on to apply the rules of construction to a constitution, their discretion is more restricted than in the construction of statutes.   (*Greencastle Tp.* v. *Block,* 5 Ind. 557; *Walcot* v. *Wigdon,* 7 Ind. 44; *Varney* v. *Justice,* 86 Ky. 596.)

A constitution not to be interpreted by rules governing construction of private writing, but is to be studied in the light of ordinary language.   (*Cornice* v. *Cornice,* 54 Pa. St. 255.)

Words in a constitution having a definite adjudicated meaning will be taken in that sense.   (*Daily* v. *Swope,* 47 Miss. 383; *Jenkins* v. *Ewin,* 8 Heisk. 456.)

The presumption is that the same meaning attaches to a given word wherever it occurs in a constitution.   (*Manly* v. *State,* 7 Md. 135; *People* v. *Purdy,* 2 Hill, 36; *Green* v. *Weller,* 32 Miss. 650.)

Debates of constitutional convention less conclusive of proper construction of constitution than are legislative debates of the proper construction of a statute.   (Cooley, Const. Lim. p. 80.)

In construing a constitution the court cannot inspect the journal of the constitutional convention for the pur-

pose of ascertaining whether the framers of the constitution intended to make a different provision than that expressed in clear unambiguous terms in the instrument itself. (*State* v. *New Orleans*, 35 La. Ann. 532; *Taylor* v. *Taylor*, 10 Minn. 107; *City of Beardstown* v. *City of Virginia*, 86 Ill. 34; *Funkhouser* v. *Spahr*, 102 Va. 306.)

This court has said that such debates are neither authoritative nor of any binding effect. (*Lewis* v. *Doron*, 5 Nev. 409.)

In case of a conflict appearing between a general and a special provision, the special provision will prevail. (*Page* v. *Allen*, 58 Pa. St. 338; *Warreck* v. *Shuman*, 5 Tex. 441; *Smith* v. *Grayson*, 18 Tex. Civ. App. 153.)

II. With these canons of construction applicable to the question under consideration fully in mind, it is contended by the petitioners that no construction of this section of the constitution (sec. 13, art. 5) is called for, nor, indeed, permitted, for the reason that it is a mere matter of interpretation to determine the plain meaning of the section.

*First*—The plain meaning of the words used, the grammatical construction of the section, together with the punctuation employed, makes unmistakable the thing meant, viz: (*a*) that the governor shall have power to suspend the collection of fines and forfeitures; (*b*) and grant reprieves for a period not exceeding sixty days, dating from the time of conviction, for all offenses, except in cases of impeachment.

*Second*—The word "suspend" as used in the first line of section 13 implies an indefinite suspension, because to hold otherwise and bring it in company with the word "reprieve" under the sixty-day qualification would make it synonymous with "reprieve" and take all meaning and significance out of the first clause of section 13, in violation of that rule of construction treated heretofore, in this brief. If the sixty-day qualification applies to the first clause of the section, then the words "suspend the collection of fines and forfeitures" mean nothing more or other or different from the words "grant reprieves * * *

for all offenses, except in cases of impeachment." If the people are presumed to have intended something, and, too, something definite, when they used the words of that first clause, then we must take the sixty-day qualification to apply only to "reprieves" alone, as, indeed, both the grammatical arrangement and punctuation of that part of the section would indicate. We cannot, under the rule cited, render this first clause "idle and nugatory."

*Third*—The word suspend, as used in the first line of section 13, must be taken to imply an indefinite suspension, because the same word as used in the fifth line of the section clearly indicates that the governor's order of suspension there provided for shall be for an indefinite period, in that it requires a further order from the governor, in case the legislature fails to dispose of the case, to make definite the time for executing the sentence. This first order is indefinite of necessity as to the period of suspension, because it requires a further order to make it definite.

The rule of construction indicated herein requires that the same meaning be given to this word "suspend" as used in the first line of the section as is manifest in its use in the fifth line of the same section.

*Fourth*—The rule of construction referred to requires that a word having a judicial or adjudicated meaning shall be taken in that sense and given that meaning where no different meaning is evidently intended.

The courts have held that the words "suspension of sentence" imply an indefinite suspension, as contradistinguished from "reprieve," which signifies no more than a postponement of execution of sentence to a time certain. (*In re Buchanan,* 146 N. Y. 264; *People* v. *Court of Sessions,* 141 N. Y. 288.)

III.   But it is urged by the respondent that construction must be resorted to, not by reason of ambiguity or absurdity, but because of such an interpretation, although in plain accord with the words used in their arrangement, is contradictory to and in conflict with the general provisions of the next section, being section 14 of article 5.

In meeting this contention, petitioners insist that there is neither contradiction nor conflict between the interpretation of section 13, as above contended for, and the provisions of section 14, for the following reasons:

*First*—The indefinite suspension of fines and forfeitures provided for by section 13 is not tantamount to the remission of such fines and forfeitures which is permitted under section 14. Such indefinite suspension is recognized by the authorities as being equivalent to a conditional pardon only, while a remission amounts to a pardon absolute. The latter expunges the sentence; the former does not affect the sentence itself, but goes merely to its execution. Upon the recall or revocation of such suspension nothing is required to put the sentence into immediate execution. (*State* v. *Hunter*, 124 Iowa. 569.)

The Indiana constitution, sec. 17, art. 5, gives to the governor the same power which is given to the board of pardons by section 14 of our constitution. The power to parol is not mentioned in the Indiana constitution, and yet in *Woodward* v. *Murdock*, 124 Ind. 439, the court held that the general power to pardon included the power to conditionally pardon, or parol, which is the same thing. See, also, *Arthur* v. *Craig*, 48 Iowa, 264, to the same effect. In both of these cases it is held that the simple recall of a conditional pardon or parol leaves the sentence as fully effective and capable of execution as it was before its suspension. So it must follow that an indefinite suspension of the collection of a fine is not tantamount to a remission of such fine.

It clearly appears that it was the purpose as to fines and forfeitures that the governor may indefinitely suspend—that is, pardon conditionally; and that the board of pardons may remit—that is, pardon absolutely.

*Second*—This special power in a limited class of minor cases so given to the governor to conditionally pardon is in harmony with the policy of the law as recognized in that class of cases which permit trial courts to indefinitely suspend the sentence of one convicted of crime.

The great weight of authority, as well as the better

reasoning, will be bound to support the power of courts to indefinitely suspend. The following cases are cited in that connection: *Commonwealth* v. *Dowdican*, 115 Mass. 133, 136; *Weaver* v. *People*, 33 Mich. 296; *State* v. *Addy*, 43 N. J. Law, 113; *Ex Parte Williams*, 26 Fla. 310; *Gibson* v. *State*, 68 Miss. 241; *State* v. *Crook*, 115 N. C. 760; *People* v. *Graves*, 31 Hun, 382; *People* v. *Flynn*, 106 N. Y. Supp. 925; *People* v. *Webster*, 36 N. Y. Supp. 745.

In most of these cases the right of the trial court to suspend the imposition of a sentence indefinitely is said to be inherent and to arise out of a recognized public policy. Even where such power is expressly given by statute, it is recognized as adding nothing to the power which at common law inheres in such courts.

The consideration of this matter of the power of courts to indefinitely suspend imposition of sentence has value here chiefly as indicating the recognized principle of public policy which foundations it. If there is such recognized principle of public policy as to criminal procedure generally, it may well be said to be the impelling reason for vesting a similar power of indefinite suspension of execution of sentence in the governor in a limited class of minor cases, such as those resulting in fines and forfeitures. The grant of such special limited power to the governor as a part of the general pardon scheme of the state in recognition of such principle of public policy could not be said to be in conflict with the general purpose indicated in section 14 of article 5. And if it was, the people had a right to specially except this class of cases from the general plan.

*Third*—That the first clause of section 13 was intended as a special limited power to conditionally pardon in case of fines and forfeitures is further indicated by the fact that the governor is not required to report his action in such cases to the legislature. He is required to "communicate to the legislature, at the beginning of every session, every case of fine or forfeiture remitted, or reprieve, or pardon, or commutation granted." This report relates to what he has done under section 13 by

way of granting reprieves, as well as what the board of pardons has done by way of remitting fines and forfeitures and granting pardons and commutations. But he is not required to report the suspensions of fines and forfeitures by him. This indicates that fines and forfeitures were regarded as forming a class by themselves and as being of such minor significance that their final disposition, so far as conditional pardon was concerned, could be trusted with the chief executive for the exercise of that limited clemency in accordance with recognized principles of public policy.

IV. But it is contended by petitioners that the interpretation claimed by respondent would make section 13 self-contradictory, for if the sixty-day qualification must be read with the first clause it would result in a contradiction of terms. "The governor shall have the power to suspend the collection of fines and forfeitures,  *  *  * for a period not exceeding sixty days, dating from the time of conviction." Now we know that many, and indeed most, forfeitures are civil and not criminal determinations. In such cases there would be no "time of conviction" and therefore no date from which the sixty days might run.

Neither are forfeitures of a civil character "offenses," as they would have to be classed if the suspension clause must be taken with and as a part of the reprieve clause.

Bouvier treats the word forfeiture under the following heads: Forfeiture by alienation (civil); forfeiture for crimes (criminal); forfeiture for treason (criminal); forfeiture by nonperformance of conditions (civil); forfeiture by waste (civil); forfeiture of wages (civil); forfeiture of vessel (civil).

Anderson gives as instances of civil forfeitures: Alienation contrary to law; nonperformance of condition; waste; bankruptcy.

If it be true that the word "forfeitures" embraces civil as well as criminal forfeitures, then it is clear that the first clause must stand alone and apart from the second clause if we would avoid a manifest conflict and contradiction of terms.

V.  Great stress has been laid by the respondent upon the debate over this section in the constitutional convention.  The discussion of this section was participated in by five members of the convention only, out of a total membership of thirty-nine.  It is indicative, therefore, of the sentiments of those five members only.  What reason is there for assuming that the other thirty-four agreed with them.  It was proposed to strike out the comma after the word "forfeiture" for the purpose of making the sixty-day qualification qualify the first clause.  But it was not done.  Is it not inferrable that the majority desired it to stand as it was, and were satisfied to let Mr. Nourse think that it did not affect the sense of the section, so that it pass as it stood?

But, in any event, it was the people and not the convention who adopted this constitution, and what right have we to presume that the people ever knew anything about these illuminating debates?  In fact, they are never published in time for the people to see them before voting on the proposed measure.

VI.  As to any possible contention by respondent that the pardon power does not include the right to interfere with a sentence imposed for contempt of court, see the following cases: Rapalje on Contempt, sec. 162; *State* v. *Sanvinet,* 24 La. Ann. 119; *Ex Parte Hickey,* 4 S. & M. (Miss.) 751; *Sharp* v. *State,* 102 Tenn. 9; *In re Mason,* 43 Fed. 510; *In re Muller,* 17 Fed. Cas. No. 9,911; Cyc., vol. 9, p. 61; Am. & Eng. Ency. Law, vol. 24, p. 568. There is but one case to the contrary, and that (a Texas case) turns upon the form of their constitution, the section concerning pardons beginning "in all criminal cases."

*R. C. Stoddard,* Attorney-General, *William Woodburn, Jr.,* and *C. R. Lewers,* for Respondent.

*Per Curiam:*

This is an original proceeding in *habeas corpus.*  The petitioner, Douglass Shelor, together with one J. W. Connella, were cited for contempt of court by Hon. W. H. A. Pike, one of the judges of the District Court of the

Second Judicial District of Washoe County, State of Nevada, for having published a certain false and defamatory article impugning the honor and integrity of said court. After a regular hearing the petitioner was convicted and adjudged guilty of contempt of court and sentenced by said district court to be imprisoned in the county jail of Washoe County for the term of two days, and further penalizing Petitioner Shelor to pay a fine of $400, and Petitioner Connella a fine of $100, and for failure to pay said fines petitioners to remain in jail until such time as the fines were paid at the rate of $2 per day. On the 2d day of July, 1910, a warrant of commitment issued out of said district court directed the sheriff of Washoe County to arrest the petitioners. In compliance with said order the petitioners were duly arrested and committed to the county jail of Washoe County.

On the 2d day of July, 1910, Hon. D. S. Dickerson, lieutenant and acting governor of the State of Nevada, issued the following executive order: "State of Nevada, Executive Chamber. Whereas, a petition has been filed in the office of the Governor of the State of Nevada, praying for the suspension of the fine imposed upon Douglass Shelor, who, on the second day of July, A. D. 1910, under and by virtue of a judgment made and entered in the District Court of the Second Judicial District of the State of Nevada, in and for the County of Washoe, State of Nevada, was fined in the sum of four hundred ($400) dollars, after having been convicted of contempt of said court; and, whereas, it appears that justice will be subserved by the suspension of the collection of said fine: Now, therefore, in consideration of the premises, and by virtue of the power and authority vested in me, by and under the provisions contained in section 13 of article 5 of the Constitution of the State of Nevada, I, Denver S. Dickerson, Lieutenant and Acting Governor of the State of Nevada, do hereby suspend the collection of said fine, as aforesaid for an indefinite period. Signed and dated at Carson City, Nevada, this

second day of July, A. D. 1910.  D. S. Dickerson, Lieutenant and Acting Governor of Nevada.  Attest: W. G. Douglass, Secretary of State.  [Seal.]"

A similar executive order, in behalf of J. W. Connella, was also issued as of the same date and served on the sheriff of Washoe County, who refused to honor the same.

On the 3d day of July, 1910, the said executive orders were served upon the sheriff of Washoe County, who, upon the advice of his legal adviser, William Woodburn, Jr., district attorney of Washoe County, refused to pay any heed whatever to said executive orders, because of the advice of said district attorney to the effect that the lieutenant and acting governor of the state had no authority whatever to issue said orders, and that said orders were void.  Having served the two days' imprisonment prescribed by the order of the court, the petitioners, Connella and Shelor, failed and refused to pay the respective $400 and $100 fines in compliance with the orders of the court, and were retained in the county jail by the sheriff of Washoe County pursuant to the order of the court which provided that for the failure to pay the fines aforesaid the petitioners should be confined in the county jail at the rate of $2 per day for every dollar of the fine unpaid.  On the 12th day of July, 1910, petitions for writs of *habeas corpus,* in behalf of Connella and Shelor, were regularly filed in this court praying for the release of petitioners on the ground that they were illegally restrained of their liberty, because of the failure of the sheriff of Washoe County to recognize the executive orders of the lieutenant and acting governor, above quoted, suspending the fines.

All of the questions involved in the present applications for writs of *habeas corpus* may, for the purposes of determination, be resolved into the query of whether or not the lieutenant and acting governor of the state had the authority to issue the executive orders suspending the collection of the fines imposed by the order of the court.  Or, in other words, has the governor of the State

of Nevada the authority to indefinitely suspend the collection of fines and forfeitures under the constitution or any law in this state?

Upon behalf of petitioners, it is contended such authority is vested in the governor by section 13 of article 5 of the constitution of Nevada, which reads as follows: "Sec. 13. The governor shall have the power to suspend the collection of fines and forfeitures, and grant reprieves for a period not exceeding sixty days, dating from the time of conviction, for all offenses, except in cases of impeachment. Upon conviction for treason, he shall have power to suspend the execution of the sentence until the case shall be reported to the legislature at its next meeting, when the legislature shall either pardon, direct the execution of the sentence, or grant a further reprieve. And if the legislature should fail or refuse to make final disposition of such case, the sentence shall be enforced at such time and place as the governor, by his order, may direct. The governor shall communicate to the legislature, at the beginning of every session, every case of fine or forfeiture remitted, or reprieve, pardon, or commutation granted, stating the name of the convict, the crime for which he was convicted, the sentence, its date, and the date of the remission, commutation, pardon, or reprieve." In short, it is contended by petitioners that the words in line 3 of section 13, namely, "for a period not exceeding sixty days dating from the time of conviction," do not qualify the first clause of the section, viz: "The governor shall have the power to suspend the collection of fines and forfeitures."

Before proceeding to a determination of these questions, it will be profitable to refer to a few of the cardinal and recognized rules applicable to an interpretation or construction which should guide a court in determining the true intent and meaning to be expressed on the subject in controversy by the framers of our constitution.

The Supreme Court of Nevada, in the case of *State* v.

*Doron,* said: "In construing a constitution the thing to be sought is the thought expressed." (*State* v. *Doron,* 5 Nev. 399; *Newell* v. *People,* 7 N. Y. 97.)

It is also a cardinal rule, where it is necessary to interpret or construe parts of a constitution, wherein a conflict of opinion has arisen as to the true intent and thought expressed as desired to be understood and conveyed by the framers of the constitution, to read the clauses in question in the light of the whole constitution.

The Supreme Court of New York, in the case of *Newell* v. *People,* said: "Whether we consider an agreement between parties a statute, or a constitution, with a view to its interpretation, the thing which we are to seek is the thought which it expresses. To ascertain this, the first resort in all cases is the natural signification of the words employed, in the order of grammatical arrangement in which the framers of the instrument have placed them. If, thus regarded, the words embody a definite meaning, which involves no absurdity and no contradiction between different parts of the same writing, then that meaning, apparent on the face of the instrument, is the one which alone we are at liberty to say was intended to be conveyed. In such a case there is no room for construction. That which the words declare is the meaning of the instrument, and neither courts nor legislatures have a right to add or to take away from that meaning." (*Newell* v. *People,* 7 N. Y. 9–97.)

The Supreme Court of the United States, in *Prigg* v. *Pennsylvania,* 16 Pet. (U. S.) 539, 10 L. Ed. 1060, said: "No court of justice can be authorized so to construe any clause of the constitution as to defeat its obvious ends when another construction, equally accordant with the words and sense thereof, will enforce and protect them." (*Prigg* v. *Pennsylvania,* 16 Pet. (U. S.) 612, 10 L. Ed. 1060.)

Cooley on Constitutional Limitations states: "It is not to be supposed that any words have been employed without occasion, or without intent that they should have

effect as part of the law. Effect is to be given, if possible, to the whole instrument, and to every section and clause. If different portions seem to conflict, the court must harmonize them, if practicable, and must lean in favor of a construction that will render every word operative, rather than one which may make some words idle and nugatory." (Cooley, Const. Lim., 6th ed. 72.)

The Supreme Court of the United States, in laying down a cardinal rule which should guide courts in a proper construction of constitutional provisions, said: "If the general purpose of the instrument is ascertained, the language of its provisions must be construed with reference to that purpose and so as to subserve it." (*Legal Tender Cases,* 12 Wall. (U. S.) 531, 20 L. Ed. 287.)

In the light of these cardinal principles of construction, let us review section 13 of our constitution, claimed by petitioners to give the governor power to indefinitely suspend the collection of fines and forfeitures, and in the light of the succeeding section of our constitution, entitled "Who may remit fines and grant pardons," which reads as follows:

"SEC. 14. The governor, justices of the supreme court, and attorney-general, or a major part of them, of whom the governor shall be one, may, upon such conditions and with such limitations and restrictions as they may think proper, remit fines and forfeitures, commute punishments, and grant pardons, after convictions in all cases, except treason and impeachments, subject to such regulations as may be provided by law relative to the manner of applying for pardons."

To our minds a simple reading of these two sections together, which are the only sections in the constitution of Nevada which refer to the power to remit fines or grant pardons, we are unquestionably led to the conclusion that the governor has no authority whatever to suspend a fine for a greater period than sixty days. The power to remit a fine absolutely and to grant pardons is vested, by the constitution of this state, in a board of

pardons, consisting of the governor, the justices of the supreme court, and the attorney-general, and a majority of these designated officers, of whom the governor shall be one, is the only power by which a fine or forfeiture can absolutely be suspended, punishment commuted, or absolute pardon granted. It will be observed, section 13 of the constitution of Nevada simply gives the governor "the power to suspend the collection of fines and forfeitures and grant reprieves for a period not exceeding sixty days, dating from the time of conviction in all cases except cases of impeachment." To give to the contention of petitioners the construction that the governor has authority to remit a fine indefinitely would, in our judgment, be in variance with the plain words of the constitution and in total conflict with the succeeding section, which vests the power positively and unequivocally to remit fines and grant pardons, etc., in the board of pardons, which was specifically created for these purposes.

The legislature, in plain, unambiguous, and unmistakable terms, vested the power to pardon and remit fines in a board of pardons, consisting of the governor, justices of the supreme court, and attorney-general. Had they wished to have vested this power in the governor alone, or to have vested this power of remitting fines absolutely in the governor, they would have so stated. The construction placed upon section 13 of article 5, by the petitioners, giving the governor the power of suspending the collection of fines and forfeitures for an indefinite period, if allowed to prevail, would create a direct conflict of authority with the board specially created and endowed with this same power in the succeeding section of our constitution, quoted heretofore in this opinion, and is violative of the following cardinal rule of constitutional construction and interpretation: "A construction which raises a conflict between parts of a constitution is not admissible, when by any reasonable construction they may be made to harmonize." (Am. & Eng. Ency. Law, 926.)

An indefinite suspension of a fine, such as made in the executive orders of the lieutenant and acting governor in the present cases, is substantially in effect a remission of the fines. (*State* v. *Strauss,* 49 Md. 288; *Neal* v. *State,* 104 Ga. 509, 30 S. E. 858, 42 L. R. A. 190, 69 Am. St. Rep. 175; *In re Flint,* 25 Utah, 338, 71 Pac. 531, 95 Am. St. Rep. 853; *United States* v. *Wilson* (C. C.) 46 Fed. 748; *In re Strickler,* 51 Kan. 700, 33 Pac. 620; *Ex Parte Clendenning,* 22 Okl. 108; 1 Okl. Cr. 227, 97 Pac. 650, 19 L. R. A. (N.S.) 1041, 132 Am. St. Rep. 628; *Gray* v. *State,* 107 Ind. 177, 8 N. E. 16; *State* v. *Voss,* 80 Iowa, 467, 45 N. W. 898, 8 L. R. A. 767; *In re Markuson,* 5 N. D. 180, 64 N. W. 939; *Commonwealth* v. *Maloney,* 145 Mass. 205, 13 N. E. 482.)

The only construction to be placed on these clauses in the constitution, as the plain, unambiguous words of that instrument indicate, and as the framers of our constitution desired, is to limit the power of the governor to suspend a fine for a period of sixty days, and by this construction so limiting the power of the governor we find section 13 in complete harmony with the succeeding section, which expressly confers upon the board of pardons the power to remit fines and forfeitures, etc. To construe the section otherwise would be to construe the intention of the framers of our constitution to give the governor the identically same power with regard to the remission of fines as it in clear and unmistakable language gave to the board of pardons, thereby creating a conflict between the powers as to who should have the right to grant a remission of fines.

While it is true that the proceedings and debates of the constitutional convention are not binding authority on courts in interpreting or construing the terms of a written constitution, yet we are of the opinion they are a valuable aid in determining the purposes and true meaning of the provisions of the constitution as intended by its framers. (*Moore* v. *District Court,* 30 Nev. 458–471; *Chesapeake R. Co.* v. *Miller,* 19 W. Va. 420; *Wisconsin Central R. Co.* v. *Taylor County,* 52 Wis. 37, 8

N. W. 833; *Clark* v. *People,* 26 Wend. (N. Y.) 599; *People* v. *New York Cent. R. Co.,* 24 N. Y. 485; *State* v. *Barnes,* 24 Fla. 153, 4 South. 560; *People* v. *Harding,* 53 Mich, 481, 19 N. W. 155; *People v. Coleman,* 4 Cal. 54, 60 Am. Dec. 581; *Springfield* v. *Edwards,* 84 Ill. 643; *Higgins* v. *Prater,* 91 Ky. 6, 14 S. W. 910; *State* v. *Doron,* 5 Nev. 399.) To this end, let us momentarily refer to the constitutional debates, where this very question now at issue arose during the discussion before this clause of the constitution was adopted, and it will be seen that our construction is borne out by the expressions of opinion made on the floor of the constitutional convention, and completely harmonizes these two sections of the constitution, which, if otherwise construed, as contended by petitioners, would be in conflict with each other.

In the constitutional convention, section 13 being under consideration, the following debate was had:

"Mr. Brosnan: I move to amend this section by striking out the words, 'to suspend the collection of fines and forfeitures.' I do not like to give that power to any single man.

"Mr. Johnson: I think it will not be found that this section invests the executive with that extraordinary power. It will be seen by a close examination of the section that it does not propose to invest the executive with the power of pardoning at all, but he is to constitute one of a board which is invested with that power. Now, the object of this and the succeeding sections, and the extent to which they go, is merely this: That until such time as the pardoning board can meet to consider any given case, it shall be within the power of the executive to suspend the enforcement of sentence—'to suspend the collection of fines and forfeitures, and to grant reprieves, for a period not exceeding sixty days.' Then, after such suspension, the pardoning power is lodged in this pardoning board. I had the honor of submitting this section to the former convention, and I then conceived it quite improper that the executive should have

the extraordinary power of absolutely pardoning any one, and for the strong reason that the responsibility should not rest upon one man alone. This portion of the section only operates to confer a power of suspension until such time as the pardoning board can pass upon the case, and I think the gentleman from Storey (Mr. Brosnan) will see the propriety of that provision.

"Mr. Nourse: Was it intended that the sixty days' limitation should apply also to the matter of fines and forfeitures?

"Mr. Johnson: I think the language can bear no other construction.

"Mr. Nourse: Then I think the word 'to' should be stricken out where it occurs before the word 'grant,' so as to read, 'and grant reprieves,' etc.

"Mr. Brosnan: Upon examination of the section, I see that the gentleman from Ormsby is right—that the power here granted is merely to postpone sentence. I, therefore, withdraw my amendment. But I am not satisfied with the section yet. It says: 'The governor shall communicate to the legislature, at the beginning of every session, every case of fine or forfeiture remitted, or reprieve, pardon or commutation granted.' Now, if a forfeiture is remitted, it is blotted out forever. If these things are to be done by the governor, there is no use, it seems to me, in applying to any ultimate power, stating the name of the offender, the character of the offense, and what is to be, or has been done, in regard to such offense.

"Mr. Hovey: I would suggest that the gentleman refer to the next section, by which the pardoning board is to be established.

"Mr. Brosnan: Well, the language here is, nevertheless, inappropriate. For I hold that the word 'remit' implies to blot out entirely. It says 'the governor shall communicate every case of fine or forfeiture remitted,' etc.

"The Chairman: The chair begs leave to suggest that the pardoning power is exercised by the board, and the

governor is merely required to report their action to the legislature.

"Mr. Johnson: That is it, exactly. And I think the recollection of the gentleman from Storey (Mr. Brosnan) will serve him in that particular. We thought, in the last convention, that the governor would be the proper person upon whom to devolve the duty of reporting to the legislature the official action of the board of pardons, of which he is ex officio a member.

"Mr. Nourse: I think a careful examination of the first few lines of the section will show that, as it at present stands, the power of the governor is unlimited, for the suspension of fines and forfeitures, at all events. In order to make sure of this matter, I suggest that we strike out the word 'to' after 'forfeiture, and.'

"Mr. Banks: I hope that will be done, and that we shall strike out the comma after the word 'forfeitures' also.

"Mr. Nourse: No, I think that is not necessary. The meaning is plain, if we take out the word 'to.' I move to strike out the word 'to.'

"The question was taken on Mr. Nourse's amendment, and it was agreed to. No further amendment being offered, the section was adopted."

The gentlemen taking part in this debate were among the most able and prominent members of the constitutional convention; Messrs. Johnson and Brosnan later serving as justices of the Supreme Court of Nevada, and Mr. Nourse as attorney-general of this state.

The governor not having the power to indefinitely suspend the payment of a fine, the order of the lieutenant and acting governor, attempting to make an indefinite suspension of the fine imposed on petitioner by a court of justice in the solemn and sacred administration of its affairs, was unwarranted, and is totally void and of no effect. The order, being in excess of the power of the governor under the constitution, was void *ab initio*, and cannot be considered as valid for a period of sixty days, the time which a fine may be suspended under

certain conditions by an executive order, as contended for by counsel for petitioner.

No contention having been made that the confinement of the petitioner was unlawful, for any reason other than that heretofore considered, and no valid reason having been shown why the petitioner should be discharged, the application for such discharge is denied, and the petitioner is ordered forthwith into the custody of the sheriff of said Washoe County to be by him confined in the county jail until the judgment and sentence of said district court is fully complied with, and that upon his so being placed in custody that his bondsmen in this proceeding be relieved of any further liability.

It is so ordered.

*Horatio Alling*, for Petitioner.

*R. C. Stoddard*, Attorney-General, *William Woodburn, Jr.*, and *C. R. Lewers*, for Respondent.